300 S.E.2d 485

**C.C. "SPIKE" COPLEY GARAGE, INC., et al.**

v.

**PUBLIC SERVICE COMMISSION OF W. VA. and Donald Everhart, etc., et al.**

**No. 15731.**

Supreme Court of Appeals of West Virginia.

Feb. 15, 1983.

Robert R. Rodecker and S. Thornton Cooper, Legal Div., Charleston, for P.S.C.

Cecil, Pearson & Barth and J. David Cecil, Charleston, for Everhart.

King, Betts & Allen, James S. Arnold and Robert B. King, Charleston, for appellees.

NEELY, Justice:

In 1979 the West Virginia Legislature passed an omnibus statute that radically changed the authority and operating procedures of the Public Service Commission. Part of this omnibus statute, Chapter 98, *Acts of the Legislature, Regular Session 1979,* enacted a new section of the *W.Va. Code,* namely, *Code,* 24A–2–2a [1979] that had the effect of deregulating the business of towing, hauling or carrying wrecked or disabled vehicles. The effective date of this new section was 1 July 1982.

The case before us now was brought as a declaratory judgment in the Circuit Court

of Kanawha County to declare *W.Va.Code*, 24A–2–2a [1979] unconstitutional because the purpose and effect of that new code section were not set forth in the title to the bill, as required by *W.Va. Const.*, art. VI, § 30. The circuit court found that the title did not give notice that deregulation of wrecker services was part of the act and held *W.Va.Code*, 24A–2–2a [1979] unconstitutional. Although this is, indeed, a close case, we find that the lower court was correct and we affirm the judgment below.

I

The conclusion to be drawn from a reading of recent cases interpreting *W.Va. Const.*, art. VI, § 30, is that:

If the title of an act states its general theme or purpose and the substance is germane to the object expressed in the title, the title will be held sufficient.

Syl. pt. 1, *State ex rel. Graney and Ford v. Sims*, 144 W.Va. 72, 105 S.E.2d 886 (1958); Syl. pt. 5, *City of Huntington v. C. & P. Tel. Co.*, 154 W.Va. 634, 177 S.E.2d 591 (1970); *accord, Butler Bldg. Co. v. Soto*, 142 W.Va. 616, 97 S.E.2d 275 (1957).

The appellants, who would have us uphold the statute, point out that the title to the bill provides that the bill will amend Article II of Chapter 24A, and explicitly gives notice that there will be a new section, namely *Code*, 24A–2–2a. Furthermore, the appellants argue that the title of the bill gave notice that its subject matter was "all relating to the organization, composition, authority and operations of the Public Service Commission...."[1] They ar-

---

**1.** The title to Chapter 98, *Acts of the Legislature, Regular Session 1979* is extremely long, but must be set forth here in its entirety. The title provides:

AN ACT to amend and reenact article one, chapter twenty-four of the code of West Virginia, one thousand nine hundred thirty-one, as amended, to amend and reenact sections one, three, four, seven, eight, eleven, thirteen and fifteen, article two of said chapter twenty-four; to further amend said article two by adding thereto three new sections, designated sections three-a, four-a and four-b; to amend and reenact sections six and seven, article three of said chapter twenty-four; to amend and reenact section one, article five of said chapter twenty-four; to amend and reenact section five, article two, chapter twenty-four-a of said code; to further amend said article two by adding thereto a new section, designated section two-a; to amend and reenact section six, article six of said chapter twenty-four-a; to amend and reenact section six, article four, chapter twenty-four-b of said code; and to amend and reenact sections one, two and three, article five of said chapter twenty-four-b, all relating to reorganization, composition, authority and operations of the public service commission; providing a legislative purpose and policy for regulating the operations of public utilities; requiring annual reports to the Legislature; creating a legislative oversight committee to monitor the public service commission; requiring that certain studies be made relating to natural gas and electric utilities; requiring the public service commission to submit a reorganization plan to the Legislature; mandating certain items to be included in such plan; requesting information on whether certain staff members of pub-

lic service commission should be exempt from present civil service pay plans; providing for the reorganization plan to be effective unless disapproved by the Legislature; definitions; defining customers; reconstituting the public service commission; providing for the appointment and reappointment of the public service commissioners and their qualifications and salaries; providing grounds for their removal from office; allowing the public service commission chairman to serve as chairman at the will and pleasure of the governor; requiring the general office of the commission to be located anywhere in the seat of government; deleting specified office hours for the commission; removing the decision making meetings of the public service commission from the state open meetings law; requiring that the orders of the commission include findings of fact and conclusions of law; allowing the commission to hire its own legal counsel; requiring hearing examiners to submit recommended orders to parties; allowing parties to a hearing before the commission an opportunity to submit proposed findings of fact, conclusions of law and briefs; allowing said parties the opportunity to file exceptions to the recommended orders and permitting oral arguments thereon; providing that the recommended order become the order of the commission if no exceptions have been timely filed; permitting pre-trial conferences, stipulations and depositions; limiting the authority of the commission to review and approve the rates and charges of municipally operated utilities; providing that a single hearing examiner decide public service district rate cases; requiring public utilities to give thirty days' notice prior to filing for a rate increase unless the commission waives

gue that under *Huntington v. C. & P. Tel. Co., supra,* there is sufficient reference to the "general theme or purpose" of *Code,* 24A–2–2a to give fair notice to interested parties that it may disturb areas of concern to them.

Unfortunately, this case is entirely distinguishable from *Huntington v. C. & P. Tel. Co., supra* because in *Huntington* the title to the bill was general and pronounced only an intent to repeal one article of the *Code* and enact a new article relating to an annual tax on incomes of certain carriers. The City of Huntington complained that in enacting a state tax on certain carriers, the Legislature had repealed the authority of cities to enact a tax on carriers and that such repeal had not been fully disclosed in the title to the bill. In disposing of this case we said:

> Inasmuch as the title to the act distinctly states that its object relates 'to an annual tax on incomes of certain carriers,' we believe that such language is sufficient to alert everybody who might be concerned, particularly carriers and levying bodies of political subdivisions of the state, to the fact that the legislature had the power to extend or to withhold from political subdivisions of the state the right to impose a tax on carriers taxed under the provisions of the statute.

154 W.Va. at 643, 177 S.E.2d 591.

In the case before us the title to the bill was not a general title like the one found in *Huntington, supra,* where lack of specificity itself would have warned of impending danger. To the contrary, the title to Chapter 98, under consideration now, was enormously specific; it set forth a brief description of every major change that the act made *except* deregulation of wrecker services. Consequently, the line of authority that sustains acts of the Legislature when the titles are comparatively vague is not controlling.

 The title to Chapter 98 is not infirm because it is vague and unspecific, but rather because it is positively misleading. A person reading a title to a bill drawn with the specificity of the title to Chapter 98 who finds no mention of wrecker services in the title would reasonably conclude that the act did not touch that subject because all the other concerns are set forth with specificity.

Our conclusion in this regard is supported by the case of *State ex rel. Davis v. Oakley,* 156 W.Va. 154, 191 S.E.2d 610 (1972) where a deputy sheriff sought to prohibit prosecution for receiving a bribe while acting as the deputy sheriff. We held that the code section under which the deputy was being prosecuted was unconstitutional under *W.Va. Const.,* art. VI, § 30 because the title to the act enumerated certain specific offices that were subject to the act, while the act itself was not limited in its application to those offices, but included the general provision "or other county officials either elected or appointed" in two places. In finding the act unconstitutional, we reasoned as follows:

> The title to the Act of the Legislature, 1959, Chapter 37, which amended Code, 61–5–7, reads as follows: "AN ACT to

the requirement; providing a new procedure for public utilities to change rates including elimination of rates being put into effect subject to refund except in limited, specific situations; providing a procedure of receivership for utilities and the appointment of a receiver; providing for the return of the utility after receivership and for the liquidation of the assets in certain cases; mandating the establishment of a uniform system of accounts and accounting for all public service districts and municipally owned utilities; requiring the public service commission to render a decision on applications for a certificate of public convenience and necessity within a certain time period; providing for the enforcement of certain federal acts; prohibiting rate increases based on automatic fuel adjustment clause; allowing the governor to designate the public service commission as the responsible or enforcing agency in this state for the enforcement of certain future federal acts; increasing the special license fees; requiring a permit from the public service commission prior to abandoning service; revising procedures for appeal; providing that all service penalties collected for violation of the gas pipeline safety provisions be paid into the state treasury; removing specific organizing references in the supervision of gas pipeline safety; prohibiting the filing for a rate increase when a previous application for an increase is still pending before the commission; and providing for certain penalties.

amend and reenact section seven, article five, chapter sixty-one of the code of West Virginia, one thousand nine hundred thirty-one, as amended, relating to bribery of commissioner of court, auditor, justice of the peace, arbitrator, umpire, or juror, and providing penalties for violations." The title contains the same object or subject relating to the bribery of the same six positions as contained in the title to Chapter 93, Acts of the Legislature, 1925, which was attempted to be amended by Chapter 37, Acts of the Legislature, 1959, by adding in the Act the words "or other county official, either elected or appointed" in two places. The title to Chapter 93, Acts of the Legislature, 1925, is in effect identical to the wording of the title to Chapter 37, Acts of the Legislature, 1959, and reads as follows: "AN ACT to amend and re-enact section seven, of chapter one hundred and forty-seven, code, relating to the offense of bribery of court commissioners, jurors, justices of the peace, umpires, auditors or arbitrators." The code reference referred to was in Barnes Code and carried over into the 1931 Code as Chapter 61, Article 5, Section 7.

The object of the 1959 Act, Chapter 37 of the Acts of the Legislature, 1959, was to include the bribery of other county officials, either elected or appointed but this object was not contained in the title. The purpose of Article VI, Section 30 of the Constitution of West Virginia is to prevent the concealment of the true purpose of an act from the public and the legislature and to advise the legislators and the public of the contents of the proposed act of the legislature. *State v. Voiers*, 134 W.Va. 690, 61 S.E.2d 521; *City of Wheeling ex rel. Carter v. American Casualty Co.*, 131 W.Va. 584, 48 S.E.2d 404. Certainly, no one reading the title could by any stretch of the imagination assume that the object of the act related to bribery of a "county official, either elected or appointed" because it is not referred to in the title.

While we have consistently sustained Acts of the Legislature where the titles were vague, our research discloses no case where we have sustained an actively misleading title. In *Davis v. Oakley, supra*, the case's only syllabus point addressed the problem of a misleading title:

Where an act of the legislature amends and reenacts a section of the Code of West Virginia by including an additional class of persons to be covered in a bribery statute and that class is not contained in the title to the act while all of the other persons who are covered in the act are specifically mentioned in the title, the part of the act that is not mentioned in the title is in violation of Article VI, Section 30 of the Constitution of West Virginia.

Of course, both *Davis v. Oakley, supra*, and *State ex rel. Myers v. Wood*, 154 W.Va. 431, 175 S.E.2d 637 (1970), upon which *Davis* relied, concerned penal statutes. Thus the cases might be distinguished from the one before us now because the rule that "matters involving penal statutes are construed strictly against the state and in favor of the citizen," *Davis v. Oakley, supra*, was involved in both of them. Nonetheless, there seems little doubt that if the title to the act challenged in *Davis* had merely set forth the object of prohibiting bribery by certain county officials, that the title to the act would have been sufficient. The decision in *Davis*, therefore, was prompted by the title's misleading nature and not by a special rule of construction applicable only to penal statutes.

II

The appellants argue that the parliamentary maneuvers attendant upon the passage of this bill were complex and that on the final day of the 1979 regular session the bill emerged in its final form from the conference committee of the Senate and House. Appellants urge us, therefore, to take into consideration that the journals of both houses containing the proceedings of 10 March 1979, the last day of the session, which would have contained the title to the bill in question, were not published until after both houses had voted on the bill and adjourned. Consequently, appellants main-

tain that to strike this act for a technical defect would be to exhalt form over substance since reorganization of the Public Service Commission and changes to its jurisdiction was covered in the title.

While appellants make a persuasive argument based upon the mechanics of the legislative process, nonetheless, *W. Va. Const.*, art. VI, § 30 is a constitutional provision and is there for a purpose. The very act of amending the title to a bill so that the title comports with the substance of the bill may call legislators' attention to the subject of the title amendment. Furthermore, after the passage of a bill by both houses, the bill must still survive veto by the Governor, and the Governor is also entitled to fair notice in the title of a bill's provisions. Whenever a procedural formal-ity is enforced the objection can be raised that form is being exhalted over content. Yet the purpose of procedure is to enhance the rationality of the deliberative process, and a requirement that the title to a bill give fair notice is calculated to enhance rationality.

Accordingly, for the reasons set forth above the judgment of the Circuit Court of Kanawha County is affirmed.

Affirmed.