588    COURT OF APPEALS OF WEST VIRGINIA.

Aug. Term,        Cutlip. vs. Sheriff of Calhoun County.        1869.

# Wheeling.

RACHEL CUTLIP vs. SHERIFF OF CALHOUN COUNTY.

August Term, 1869.

The county court of Calhoun county was established by the general assembly of Virginia, and a subsequent vote of the people, in 1858, at Arnoldsburg. The legislature of this State, by an act passed in January, 1867, located the county seat at another place in the county. This latter act was entitled "An act locating the county seat of Calhoun county." The 3d section provided that the board of supervisors of the county were authorized to sell any county property at Arnoldsburg. This act was repealed by an act passed by the legislature in March, 1869. HELD:

1. That the provision of the act of January, 1867, authorizing the board of supervisors to sell county property at Arnoldsburg, is another and different object from that stated in the title of the act, and is therefore repugnant to the provision of the constitution found in art. IV, sec. 36, as follows: "No law shall embrace more than one object, which shall be expressed in its title;" and the entire act is therefore void.

2. Courts held at Arnoldsburg are therefore valid, and parties in custody under indictments found therein are lawfully detained.

The county seat of Calhoun county was located at Arnoldsburg in 1858. On the 27d of January, 1867,† the legislature passed an act removing the county seat to Stump's farm in same county. An act passed March 4th, 1869,* repealed the act of January 22d, 1867. After the

---

† "Be it enacted by the legislature of West Virginia:

1. The county seat of the county of Calhoun shall hereafter be at the farm of Simon P. Stump, on the Little Kanawha river, in said county: and the public buildings to be erected shall be upon a site on said farm to be selected by the board of supervisors of said county.

2. Until such buildings are erected, the said board of supervisors shall provide buildings as near as practicable to the site so selected, to be used temporarily for county purposes.

3. The board of supervisors of said county are hereby authorized to sell any county property at Arnoldsburg, in said county.

4. The judge of the sixth judicial circuit is authorized to hold his court for said county in the buildings to be provided under this act, and the several of-

passage of the act of March 4th, 1869, the petitioner, Rachel Cutlip, was indicted for murder in the circuit court of Calhoun county, which court was held at Arnoldsburg. She petitioned this court for a writ of *habeas corpus*, alleging that she was unlawfully detained by the sheriff of that county, having been arrested in pursuance of the indictment, because the court was held at Arnoldsburg when the indictment was found, when there was, in fact, no county seat lawfully established in Calhoun county, by reason of the passage of the act of January 22d, 1867, and its repeal by the act of March 4th, 1869.

*Cozad* for the petitioner.

BROWN, President. This is a writ of *habeas corpus*, by which the plaintiff seeks to be discharged from custody upon an indictment for felony found against her in the circuit court of Calhoun county, upon the sole ground that the proceedings of said court were void, because the court was held at Arnoldsburg, in said county.

Arnoldsburg was the county seat established by the vote of the people in pursuance of the act of 1858, and so remained, unless it has been changed by the acts of January 22d, 1867, and of March 4th, 1869. The former, if valid, removed the county seat to Stump's farm, in said county, and the latter repealed the former without more saying. And the important question comes practically up, where, under this state of things, is the lawful county seat of the county, or is the monstrous pretension true that the people have been left without any seat of justice in the county.

The constitution, article IV, section 36, is in these words: "No law shall embrace more than one object, which shall be expressed in its title."

ficers required to have offices at the county seat shall remove their offices to the site selected in pursuance of this act, as soon as suitable buildings are provided for their accommodation.

* Be it enacted by the legislature of West Virginia:

Chapter one of the acts of eighteen hundred and sixty-seven is hereby repealed.

The·object of this provision was to 'guard against the enactment of laws by a sort of fraud upon the legislature by including in an act for one purpose, which was stated in its title, other and different objects, not so stated, and of which nothing was often known save by a few interested in the bill. And the evil of which enhanced when bills were merely read by their titles and put upon their passage and often rushed through on the last day of the session of the legislature.

Another important object was to secure a fair and impartial consideration of each subject by making it to stand or fall on its merits, instead of having it carried against the wishes of the majority, often by having it tacked to some important measure it might be difficult or disastrous to defeat.

The history of legislation is rife with evils of this character sought to be remedied by this provision of the constitution.

The title of the act of January 22d, 1867, is "An act lo-·cating the county seat of Calhoun county," and section 1st, in conformity with the object thus stated in the title, provides that the county seat of Calhoun county shall thereafter be at the farm of Simon P. Stump, on the Little Kanawha river, in said county.

Section 3d of said act provides, that the board of supervisors of said county are thereby authorized to sell any county property at Arnoldsburg, in said county. This is another and different object from that stated in the title to the act, and is, therefore, repugnant to the constitution, and void.

In the case of *The State ex rel. Hixon* vs. *Lafayette County Court*, 41 Mo., 39, it was held that an act which had two objects, and but one of them was stated in the title, was valid as to the object so stated in the title, and void as to the object not so stated. The constitution of Missouri, declaring that "No law enacted by the general assembly shall relate to more than one subject, and that shall be expressed in the title, but if any subject embraced in an act be not expressed

in the title such act shall be void only as to so much thereof as is not so expressed."

The constitution of Missouri is clearly directory only, to the legislature, not to include more than one subject in the act, but it is not directory merely in forbidding and avoiding any subject not embraced in the title. It differs, therefore, in that from the constitution of this State, which positively forbids and avoids the act entire if it contains more than one subject, and also if that object be not stated in the title.

I think, therefore, the act of January 22d, 1867, was unconstitutional and void, and consequently the seat of justice for Calhoun remains at Arnoldsburg, where it was originally lawfully established by the vote of the people. And the courts held there are valid and not void, as supposed in the plaintiff's petition for the writ of *habeas corpus.* It appearing that the plaintiff is detained for no other cause than upon the indictment aforesaid, is not, therefore, detained without lawful authority. Therefore, it is considered that the plaintiff be remanded to the custody of the said sheriff, and that the defendant recover against the plaintiff his costs about this defence in this behalf expended.

Berkshire, J., concurred with the president.

Maxwell, J., *dissentiente.* The *habeas corpus* is to release any one from restraint, who is detained without lawful authority. No imprisonment is illegal where the process is a justification of the officer, and process, whether by writ or warrant, is legal wherever it is not defective in the frame of it, and has issued in the ordinary course of justice from a court or magistrate having jurisdiction of the subject though there has been error or irregularity in the proceedings previous to the issuing of it. An officer cannot disregard process which is regular on its face, but must execute it. *Cable* vs. *Cooper*, 16 Johns., 155.

If the officer cannot allege error in the process, how can a prisoner arrested upon it do it consistently with the common law principle, that the proceedings of a court of com-

petent jurisdiction are not to be reversed or set aside by a collateral proceeding, where redress may be had by appeal, writ of error, or by any other direct means of review? That this principle is applicable in cases of *habeas corpus*, is sustained fully by authority.

The court, in one of the cases which I have examined, in commenting on these rules, says: "Any other rule would present some very curious judicial phenomena. By an inversion of their functions, a single judge in vacation, and of perhaps an inferior court, would be legally competent to rejudge the judgments of the highest tribunal in the land, and the supreme court of the State, instead of proceeding systematically in the correction of errors, would be called upon to produce its results by a new and shorter process, while in the guise of writs of *habeas corpus* it would be flooded with appeals from the decisions of the other courts on questions of bail. The rule is therefore absolutely necessary to prevent judicial proceedings from running into a state of incurable disorder." It is clear to my mind that this court cannot in this form revise the proceedings of the court below behind the process on which the prisoner was arrested, and the said process being good in form and substance, the prisoner must be remanded.

Several questions have been considered by my associates which, with due respect for their opinions, I do not think arise or should have been considered in this case upon *habeas corpus*, but as they have given their opinion upon them, I will proceed to give my impressions upon the same questions, with the prefatory observation, that as they are improperly given on a collateral question little importance should be attached to them.

My associates hold that the act of January 22d, 1867, entitled "an act locating the county seat of Calhoun county" is in violation of the 36th section of the IVth article of the constitution of the State, which provides that, "No law shall embrace more than one object which shall be expressed in its title," and is therefore null and void. It is supposed that the said act embraces two objects in this, that the third section

provides that the board of supervisors of said county are hereby authorized to sell any county property at Arnoldsburg in said county. The courts ought to hold the acts of the legislature valid wherever it can be done. The provision requiring acts of legislatures to embrace but one subject is so comparatively new that not very many decisions are to be found in the construction of the meaning of such provisions. I find that the subject has been before the supreme court of the State of Ohio in the case of *Prin* vs. *Nicholson*, 6 Ohio State Rep., 176. The provision of the Ohio constitution is that "no bill shall contain more than one subject which shall be clearly expressed in its title."

Judge Swan, delivering the opinion of the court, said "that no bill shall contain more than one subject, which shall be clearly expressed in its title, is also made a permanent rule in the introduction and passage of bills through the House. The subject of the bill is required to be clearly expressed in the title for the purpose of advising members of its subject, when voting, in cases in which the reading has been dispensed with by a two-thirds vote. The provision that a bill shall contain but one subject was to prevent combinations by which various and distinct matters of legislation should gain a support which they could not if presented separately.

"As a rule of proceeding in the general assembly it is manifestly an important one. But it was intended to effect any practical object for the benefit of the people in the examination, construction or operation of acts passed and published, we are unable to see it. The title of an act may indicate to the reader its subject, and under the rule each act would contain one subject. To suppose that for such a purpose the constitutional convention adopted the rule under consideration, would impute to them a most minute provision for a very imperfect heading of the chapter of laws and their sub-divisions. This provision being intended to operate upon bills in their progress through the general assembly, it must be held to be directory only. It relates to bills and not to acts. It would be most mischievous in

practice to make the validity of every law depend upon the judgment of every judicial tribunal of the State, as to whether this one subject was clearly expressed in the title of the act or bill. Such a question would be decided according to the mental precision and mental discipline of each justice of the peace and judge. No practical benefit could arise from such inquiries. We are, therefore, of the opinion that in general, the only safeguard against the violation of these rules of the House is their regard for, and their oath to support, the constitution of the State." The other four judges at that time on the bench concurred with Judge Swan in the views expressed by him.

The subject has also been before the supreme court of California in the case of *Washington, et al.* vs. *Page*, reported in 4 California Rep., 388.

The provision in the constitution of California is, "Every law enacted by the legislature shall embrace but one object, which shall be expressed in its title." Chief Justice Murray, delivering the opinion of the court, said, "we regard this section of the constitution as merely directory, and if we were inclined to a different opinion, would be careful how we lent ourselves to the construction which must, in effect, obliterate almost every law from the statute book, unhinge the business and destroy the labors of the last three years. The first legislature that met under the constitution, seems to have considered this section as directory, and almost every act of that and the subsequent sessions would be obnoxious to this objection. The contemporaneous exposition of the first legislature, composed of many who had participated as members of the convention in forming our State constitution, adopted or acquiesced in by every subsequent legislature, and tacitly assented to by the courts, when taken in connection with the fact that rights have grown up under it, so that it has become a rule of property, must govern our decision."

The question was before the court of appeals of the State of Maryland, in the case of *Davis* vs. *The State*, 7 Maryland Rep., 151. The provision of the Maryland constitution is

"Every law enacted by the legislature shall embrace but one subject, and that shall be described by the title."

Judge Mason, delivering the opinion of the court, says: "The object of this constitutional provision is obvious and highly commendable. A practice had crept into our system of legislation of engrafting upon subjects of great public interest and importance, for local or selfish purposes, foreign and often pernicious matters, and rather than endanger the main subject, or for the purpose of securing new strength for it, members were often induced to sanction and actually vote for such provisions, which if they were offered independently would never have received their support. In this way the people of our State have been frequently inflicted with evil and injurious legislation. Besides foreign matters has often been stealthily incorporated into a law during the haste and confusion always incident upon the close of the session of legislative bodies, and it has not unfrequently happened that in this way the statute books have shown the existence of enactments that few of the members of the legislature knew anything of before. To remedy such and similar evils was this provision inserted into the constitution, and, we think, wisely inserted. We are not prepared to say that a whole law otherwise constitutional would be rendered void by the introduction of a single foreign or irrelevant subject into it, and where such subject was not indicated in the title. In such a case the irrelevant matter would be rejected as void while the principle subject of the law would be supported if properly described in the title. But if an act of assembly be composed of a number of discordant and dissimilar subjects, so that no one could be clearly recognized as the controlling or principal one, the whole law would be void."

Without deciding whether the construction given by the Ohio and California courts or that given by the court of Maryland be correct, to apply the construction of the Maryland court to the act of January, 22d, 1867, the main body of the act is valid, and the third section only would be void, while to apply the construction of the Ohio and California

courts the entire act would be valid.    The constitution of Virginia of 1851 has the provision in it in the precise form it is found in the constitution of this State.

The supreme court of appeals of Virginia had the construction of the provision under consideration in the case of *The Commonwealth* vs. *Drewry and others*, 15 Grat., 1.

The title of the act which was brought in question was, "An act concerning sheriffs and commissioners of the revenue, their duties and compensation," while the act itself was apparently inconsistent with its title.

Judge Samuels, delivering the opinion of the court, touches the subject very cautiously, and disposes of it as follows: "It may be difficult to declare the effect of this provision if, at any time hereafter, an act of assembly shall be found to conflict therewith, it is enough for the purposes of this case to say that no such conflict exists therein.    The act is in reference to a single object, to wit: county organizazation."

The judge says the act is in reference to a single object, which he says is "county organization," but it seems to me a great stretch of imagination to find any such object expressed in the title of the act, yet the act was held valid.

It looks to me very much like a determination to maintain the act, notwithstanding the object is not expressed in the title.

The act passed March 4th, 1869, entitled, "An act to repeal chapter 1, of the acts of 1867," was intended to repeal the act passed January 22d, 1867, entitled "An act locating the county seat of Calhoun county," and it might be a question of very serious consideration in a proper case whether the act is not unconstitutional and void, because its object is not expressed in its title, if the provision of the constitution is not to be construed as merely directory to the legislature, as it is held in Ohio and California.

WRIT DENIED.