370 S.E.2d 141

**STATE of West Virginia ex rel. Ronald D. WALTON, in his Capacity as Executive Director of the West Virginia Board of Medicine**

v.

**Hon. Patrick CASEY, Judge, etc., and Enrique C. Mata.**

No. 18324.

Supreme Court of Appeals of West Virginia.

June 3, 1988.

James N. Cagle, Charleston, for Ronald D. Walton.

Joseph R. Goodwin, Goodwin & Goodwin, Charleston, for Patrick Casey.

MILLER, Justice:

On March 1, 1988, the Circuit Court of Kanawha County entered an order to compel the issuance of a permanent medical license to Enrique C. Mata, M.D., pursuant to W.Va.Code, 30–14–8a. Ronald D. Walton, Executive Director of the West Virginia Board of Medicine (Board), petitions this Court for a writ to prohibit enforce-

ment of the circuit court order. He contends that the legislative act which contained W.Va.Code, 30–14–8a (1987), was defectively titled and, therefore, in violation of W.Va. Const. art. VI, § 30. We agree, and award the writ of prohibition.

The crux of the petitioner's argument is that the Legislature in 1987 placed in the osteopathic article of the West Virginia Code, a section, W.Va.Code, 30–14–8a, which enabled medical physicians, who once held only a temporary permit under W.Va.Code, 30–3–10, to obtain a permanent license without the necessity of passing the Board's examination.

W.Va.Code ch. 30, art. 3 confers upon the Board the sole and exclusive authority to license persons, other than osteopathic physicians, to practice medicine in the State of West Virginia. Former W.Va.Code, 30–3–10, also authorized the Board to issue temporary permits to unlicensed medical physicians when it determined the public health so warranted. These permits were limited to specified geographic areas of the State and were valid for up to one year. A permit holder was subject to the supervision of a duly licensed medical physician.

Though a permit holder was not required to show satisfactory completion of the Board's medical examination, he was required to take such examination annually as a condition of renewal. In 1984, the Legislature amended W.Va.Code, 30–3–10, to provide that physicians holding a temporary permit would be ineligible to obtain any additional permits after July 1, 1985, unless they had passed the medical examination prior to that date.[1]

The respondent, Enrique C. Mata, received an M.D. degree in 1972 from the Universidad de Madrid in Madrid, Spain. He has resided in West Virginia since 1974. In that year, he applied for and obtained a temporary permit to practice medicine. The permit was renewed annually until 1985. While practicing under the permit,

he was stationed at hospitals in Hopemont and Fairmont.

As required by former W.Va.Code, 30–3–10, Dr. Mata took the Federation of Licensing Boards Examination at least once each year he held a temporary permit. He was unable to obtain a passing score in fourteen attempts. On September 9, 1985, his temporary permit was revoked. Since 1985, he has worked as the clinical director of an alcohol and substance abuse facility in Kingwood.

In 1987 the Legislature undertook to revise the licensure requirements for medicine and osteopathy. Senate Bill 166[2] amended W.Va.Code, 30–3–10, to abolish temporary permits for medical physicians. Subsequently, House Bill 2778[3] amended numerous sections of W.Va.Code ch. 30, art. 14, which provides for the regulation of osteopathic physicians. It also added a new section, W.Va.Code, 30–14–8a (1987), titled "Resident Physicians," which allowed former permit holders to apply for and receive permanent medical licenses:

"Any resident physician who has held a temporary certificate in the state of West Virginia prior to the first day of January, one thousand nine hundred eighty-seven, is entitled to apply for and obtain a permanent license. In lieu of any other requirement of law, *including the provisions of article three of this chapter* [W.Va.Code ch. 30, art. 3], the physician is entitled to apply for and obtain a permanent license by virtue of the fact that he or she has held a temporary certificate and has practiced in the state of West Virginia during the period of temporary certification." (Emphasis added).

In February, 1988, Dr. Mata applied for a permanent medical license citing W.Va. Code, 30–14–8a. By letter dated February 26, 1988, his attorney demanded that the Board immediately issue a license. In a reply of even date, Mr. Walton advised Dr.

---

1. As originally enacted in 1980, W.Va.Code, 30–3–10, required permit holders to pass the examination before July 1, 1982. This date was extended to July 1, 1984, by amendment in 1981.

2. 1987 W.Va. Acts ch. 101 (passed March 10, 1987).

3. 1987 W.Va. Acts ch. 103 (passed March 14, 1987).

Mata that the Board's licensure committee would consider his application at its regularly scheduled meeting on March 13, 1988. On February 29, 1988, Dr. Mata petitioned the Circuit Court of Kanawha County for a writ of mandamus to compel the issuance of a license pursuant to W.Va.Code, 30–14–8a (1987). A mandamus was issued by order dated March 1, 1988.

The petitioner, Ronald D. Walton, contends on behalf of the Board that the circuit court acted beyond its jurisdiction [4] in issuing a mandamus to require the Board to issue a permanent medical license to the respondent. The primary argument made is that the title to House Bill 2778 related solely to osteopathic objects contained in W.Va.Code, 30–14–1 *et seq.*, and gave no indication it was intended to grant permanent medical licenses to physicians who had previously held temporary permits.[5]

W.Va. Const. art. VI, § 30, reads, in part: "No act hereafter passed, shall embrace more than one object, and that shall be expressed in the title. But if any object shall be embraced in an act which is not so expressed, the act shall be void only as to so much thereof, as shall not be so expressed[.]" [6]

Our constitutional provision is similar to that embodied in many state constitutions.[7] Our earliest case discussing this provision, *Cutlip v. Sheriff of Calhoun County,* 3 W.Va. 588, 590 (1869), set out its purpose at some length:

"The object of this provision was to guard against the enactment of laws by a sort of fraud upon the legislature by including in an act for one purpose, which was stated in its title, other and different objects, not so stated, and of which nothing was often known save by a few interested in the bill. And the evil of which enhanced when bills were merely read by their titles and put upon their passage and often rushed through on the last day of the session of the legislature.

"Another important object was to secure a fair and impartial consideration of each subject by making it to stand or fall on its merits, instead of having it carried against the wishes of the majority, often by having it tacked to some important measure it must be difficult or disastrous to defeat.

"The history of legislation is rife with evils of this character sought to be remidied [sic] by this provision of the consti-

4. We have traditionally held this to be a ground for prohibition, as evidenced by Syllabus Point 5 of *Perdue v. Ferguson,* 177 W.Va. 44, 350 S.E.2d 555 (1986):

"'"A writ of prohibition shall lie as a matter of right in all cases of usurpation and abuse of power, when the inferior court has not jurisdiction of the subject matter in controversy, or, having such jurisdiction exceeds its legitimate powers." Syl. pt. 1, *State ex rel. UMWA International Union v. Maynard,* [176] W.Va. [131], 342 S.E.2d 96 (1985).' Syl. pt. 4, *State ex rel. Ayers v. Cline,* [176] W.Va. [123], 342 S.E.2d 89 (1985)."

5. The full text of the title to House Bill 2778 reads:

"AN ACT to amend and reenact sections three, four, five, six, eight, nine-a and ten, article fourteen, chapter thirty of the code of West Virginia, one thousand nine hundred thirty-one, as amended; to further amend said article by adding thereto a new section, designated section eight-a; and to amend and reenact sections two and three, article fourteen-a of said chapter, all relating to the state board of osteopathy, its members, applicants for examination, training of interns, license fees,

temporary permits, resident physicians, fees for osteopathic medical corporations, biennial renewal of osteopathic assistant certification, and fee."

6. The full text of W.Va. Const. art. VI, § 30 is:

"No act hereafter passed, shall embrace more than one object, and that shall be expressed in the title. But if any object shall be embraced in an act which is not so expressed, the act shall be void only as to so much thereof, as shall not be so expressed, and no law shall be revived, or amended, by reference to its title only; but the law revived, or the section amended, shall be inserted at large, in the new act. And no act of the legislature, except such as may be passed at the first session under this Constitution, shall take effect until the expiration of ninety days after its passage, unless the legislature shall by a vote of two thirds of the members elected to each house, taken by yeas and nays, otherwise direct."

7. *See generally* 73 Am.Jur.2d, *Statutes* § 100 (1974); 1 Sutherland Statutory Construction § 18.01 (4th ed. 1984).

**488**

tution."[8]

In *Elliott v. Hudson*, 117 W.Va. 345, 349, 185 S.E. 465, 466 (1936), which was decided under our present constitutional provision, we reiterated much the same reasons:

"To submerge an important proposition in the body of an act with wholly inadequate reference thereto, if any, in the title, not only is subversive of the principle just discussed that all interested persons should be fairly informed of the import of pending legislation, but is destructive of the American concept of the necessity of open consideration of legislative matters. Such concealment tends to deception.... For these reasons, a title which does not furnish at least a 'pointer' to a challenged provision of the act is insufficient."

These concerns have led us to conclude that W.Va. Const. art. VI, § 30, which requires that the object of an act of the Legislature "shall be expressed in the title," serves two salutary purposes. First, it is designed to give notice by way of the title of the contents of the act so that legislators and other interested parties may be informed of its purpose. Second, it is designed to prevent any attempt to surreptitiously insert in the body of the act matters foreign to its purpose which, if known, might fail to gain the consent of the majority. *See State ex rel. City of Charleston v. Bosely*, 165 W.Va. 332, 268 S.E.2d 590 (1980); *State ex rel. Davis v. Oakley*, 156 W.Va. 154, 191 S.E.2d 610 (1972); *General Elec. Co. v. A. Dandy Appliance Co.*, 143 W.Va. 491, 103 S.E.2d 310 (1958); *State v. Voiers*, 134 W.Va. 690, 61 S.E.2d 521 (1950); *Cutlip v. Sheriff, supra.*[9]

In the present case, we are concerned with that portion of art. VI, § 30 which requires the object of an act to be "expressed" in the title. Our cases hold that the requirement of expressiveness contemplated by our Constitution necessarily implies explicitness. A title must, at a minimum, furnish a "pointer" to the challenged provision in the act. The test to be applied is whether the title imparts enough information to one interested in the subject matter to provoke a reading of the act. *E.g., City of Huntington v. Chesapeake & Potomac Tel. Co.*, 154 W.Va. 634, 177 S.E.2d 591 (1970); *General Elec. Co. v. A. Dandy Appliance Co., supra; State ex rel. Dyer v. Sims*, 134 W.Va. 278, 58 S.E.2d 766 (1950), *rev'd on other grounds*, 341 U.S. 22, 71 S.Ct. 557, 95 L.Ed. 713 (1951); *City of Wheeling ex rel. Carter v. American Cas. Co.*, 131 W.Va. 584, 48 S.E.2d 404 (1948); *Elliott v. Hudson, supra.*

The amendments to W.Va.Code ch. 30, art. 14, contained in House Bill 2778 dealt exclusively with the subject of osteopathic physicians. Its title contained no reference to the fact that any portion of chapter 30 was to be altered other than article 14. The medical licensure requirements for other physicians, such as Dr. Mata, which are set out in W.Va.Code, 30–3–10, were not referenced in the title.

Indeed, the earlier amendment to W.Va. Code, 30–3–1 *et seq.*, occasioned by Senate Bill 166, enacted four days prior to the osteopathic bill, would have led a legislator or interested citizen to conclude that temporary permits under W.Va.Code, 30–3–10, had been abolished and that there were no provisions made to obtain a further temporary or permanent permit.[10]

8. *Cutlip* was decided under art. IV, § 36 of the 1863 Constitution of West Virginia, which was less stringent than our current provision and provided: "No law shall embrace more than one object, which shall be expressed in its title."

9. Another obvious purpose for this constitutional provision is to prevent the Legislature from enacting a bill which contains several different objects. This one-object standard has not been as frequently litigated as the requirement that an object of the bill be "expressed" in the title. In *City of Huntington v. Chesapeake & Potomac*

*Tel. Co.*, 154 W.Va. 634, 177 S.E.2d 591 (1970), we recognized that the object of a bill could contain many different parts. In *Simms v. Sawyers*, 85 W.Va. 245, 101 S.E. 467 (1919), we held that the one-object requirement was violated where an act of the legislature had embraced "two separate and distinct subjects of legislation, both of which [were] expressed in the title[.]" Syllabus Point 5, in part.

10. This conclusion would reasonably follow from the 1984 version of W.Va.Code, 30–3–10, which terminated temporary permits as of July

Consequently, it was only a result of the insertion of section 8a into the osteopathic section of the Code that Dr. Mata was enabled to assert a claim to a permanent medical license. Such a surreptitious provision, undisclosed in the title, which extended substantial benefits to physicians who could not otherwise qualify for a permanent license, is assuredly the very practice that our constitutional provision was designed to prevent.[11]

We, therefore, conclude that insofar as the object of W.Va.Code, 30–14–8a, was not expressed in the title of House Bill 2778, the section violates W.Va. Const. art. VI, § 30 and is null and void. Because this constitutional provision directs that only the "object ... not so expressed ... shall be void," the remaining portions of the act remain valid.

For the foregoing reasons, a writ of prohibition is issued against the respondents staying the execution of the circuit court's order of March 1, 1988.

Writ awarded.

1, 1985, for those who had failed to pass the medical examination prescribed by the Board before this date. The amendments in Senate Bill 166 made no provisions for temporary permit holders to obtain additional temporary permits.

**11.** The Legislature in 1988 corrected this problem by the repeal of W.Va.Code, 30–14–8a. Senate Bill 574, 1988 W.Va. Acts ch. 99 (passed March 2, 1988). An affidavit by Mr. Walton, dated April 15, 1988, states that only ten applications by former permit holders were received before its repeal.