388 S.E.2d 297

**NORTHWESTERN DISPOSAL COMPANY, INC., A West Virginia Corporation; E.R.O., Inc., a West Virginia Corporation; Ham Sanitary Landfill, Inc., a Florida Corporation; and Northfork Landfill, Inc., a West Virginia Corporation**

**v.**

**The WEST VIRGINIA PUBLIC SERVICE COMMISSION; Otis D. Casto, a Member of the West Virginia Public Service Commission; and Michael D. Greer, a Member of the West Virginia Public Service Commission.**

No. 18899.

Supreme Court of Appeals of West Virginia.

Dec. 20, 1989.

**424**

Franklin G. Crabtree, Public Service Com'n of W.V., Charleston, for Public Service Com'n.

Raymond G. Musgrave, Musgrave & Morgan, L.C., Point Pleasant, William R. Pfalzgraf, Davis, Bailey, Pfalzgraf & Hall, Parkersburg, Gregory E. Elliott, Samuel F. Hanna, Hanna & Elliott, Charleston, Leonard Knee, Huddleston, Bolen, Beatty, Porter & Copen, Huntington, for appellees.

PER CURIAM:

This case is before the Court upon the appeal of the West Virginia Public Service Commission (PSC) and two of its members from a final order of the Circuit Court of Kanawha County.

The appellees, Northwestern Disposal Company, Inc., E.R.O., Inc., Ham Sanitary Landfill, Inc., and Northfork Landfill, Inc., operate commercial solid waste facilities, sometimes called "sanitary landfills," in various counties in West Virginia. Each also has an interest in a motor carrier regulated by the PSC.[1]

The order of the circuit court, from which the PSC appeals, declared *W. Va. Code*, 24–2–1b [1988] unconstitutional. That court concluded that the title to 1988 *West Virginia Acts*, chapter 84 (passed March 12, 1988), referred to by the court and the parties as Committee Substitute for House Bill 3146 (hereinafter "Comm. Sub.H.B. 3146"), and which amended article 2 of chapter 24 by adding section 1b to article 2, chapter 24, violated article VI, section 30 of the *West Virginia Constitution*. That constitutional provision reads, in relevant part:

> No act hereafter passed, shall embrace more than one object, and that shall be expressed in the title. But if any object shall be embraced in an act which is not so expressed, the act shall be void only as to so much thereof, as shall not be so expressed[.]

The circuit court further enjoined the enforcement of *W. Va. Code*, 24–2–1b [1988], which provides as follows:

> Effective the first day of July, one thousand nine hundred eighty-eight, in addition to all other powers and duties of the commission as defined in this article, *the commission shall establish, prescribe and enforce rates and fees charged by commercial solid waste facilities, as defined in* section two, article five-f, chapter twenty of this code, *that are owned or under the direct control of persons or entities who are regulated under* section five, article two, chapter twenty-four-a of this code. The commission shall establish, prescribe and enforce rules and regulations providing for

---

1. *W. Va. Code*, 24A–2–5 [1980] requires all motor vehicle common carriers to obtain a "certificate of convenience and necessity" from the PSC in order to operate within the state.

the safe transportation of solid waste in the state.

(emphasis supplied) [2]

The fundamental question before us is whether the title to Comm.Sub.H.B. 3146 violates article VI, section 30 of the *West Virginia Constitution*.[3] Because the title to the bill is lengthy, it will not be repeated in this opinion in detail. The bill itself was an omnibus bill which related to the collection of solid waste and litter. Several chapters of the *Code* were referred to in the bill, including, but not limited to, County Commissions and Officers, Public Health, Roads and Highways, Motor Vehicle Administration, Natural Resources, Public Service Commission, Child Welfare, Crimes and Their Punishment, and Criminal Procedure.

The relevant portions of the title for purposes of this case are:

[T]o amend and reenact section three, article one, chapter twenty-four of said code; to amend article two of said chapter by adding thereto two new sections, designated sections one-b and one-c; ... all relating generally to the collection of solid waste and litter; ... study and report of the public service commission[.]

The words "solid waste," in one context or another, appear numerous times in the title, as well as the terms "landfills," "dumps," "disposal" and "litter."

The appellees argue that the title does not sufficiently give notice to a person interested in the bill to be informed of its purpose. Specifically, they focus on the absence of any reference to the enforcement of rates and fees charged by commercial solid waste facilities that are owned by persons or entities regulated by the PSC. The circuit court, while acknowledging this

2. We note that *W.Va.Code*, 24–2–1f [1989], which was enacted in 1989, now confers upon the PSC the power to regulate *all* commercial solid waste facilities, not only those owned or under the direct control of regulated motor vehicle common carriers. That section provides, in pertinent part:

> Effective the first day of July, one thousand nine hundred eighty-nine, in addition to all other powers and duties of the commission as defined in this article, the commission shall establish, prescribe and enforce rates and fees charged by commercial solid waste facilities, as defined in subsection (b), section two, article nine, chapter twenty of this code[.]

The definition of "commercial solid waste facility" contained in *W.Va.Code*, 20–9–2(b) [1989], referred to in *W.Va.Code*, 24–2–1f [1989], is nearly identical to that contained in *W.Va.Code*, 20–5F–2(c) [1989], which is referred to in *W.Va.Code*, 24–2–1b [1988]. The only difference in the two definitions is that *W.Va.Code*, 20–9–2(b) [1989] excludes "the legitimate reuse and recycling of materials for structural fill, road base, mine reclamation, and similar applications" as a "commercial solid waste facility."

The impact of *W.Va.Code*, 24–2–1f [1989] upon *W.Va.Code*, 24–2–1b [1988] need not be decided in this case.

3. The plight of Comm.Sub.H.B. 3146 is long and arduous. This omnibus bill was first introduced in March, 1987, and, at that time, it made no reference to the PSC's regulation of rates and fees of solid waste facilities. Although it was referred to the House Judiciary Committee, no further action was taken on the bill in 1987.

H.B. 3146 was reintroduced in January, 1988 and was referred to the House Judiciary Committee. That committee reported out "Commit-

tee Substitute for House Bill 3146," which included *in its title* "requiring the public service commission to regulate rates and fees charged by solid waste facilities[.]" It was this bill that created *W.Va.Code*, 24–2–1b [1988]. The House of Delegates passed H.B. 3146.

The Senate referred H.B. 3146 to its Natural Resources Committee, which amended the bill. The bill, as amended, made no reference to the PSC and its authority to regulate rates and fees charged by solid waste facilities. The title of H.B. 3146, as amended, did, however, set forth the chapters, articles, and sections of the *W.Va. Code* being amended. H.B. 3146, as amended, was then referred to the Senate Finance Committee, which recommended that the Senate pass the bill, as amended. The Senate passed the bill, as amended, with no reference in its title to the PSC and its jurisdiction to regulate rates and fees of solid waste facilities.

The House of Delegates, however, did not concur with the Senate's amendments, so a conference committee was established, composed of five members from the House of Delegates and five members from the Senate. The conference committee's version of H.B. 3146 did not make *specific* reference in its title to the PSC's regulation of solid waste facilities, but it did make numerous references to "solid waste" and other related topics. H.B. 3146, as amended by the conference committee, was passed by the House of Delegates and the Senate on March 12, 1988, the last day of the regular legislative session. As an enrolled bill, it was signed into law by then-Governor Moore on March 30, 1988, to become effective on July 1, 1988.

is a "close case," agreed that the title was defective. Its order reads, in part, as follows:

> [T]he title in question is replete with general reference to control of solid waste disposal facilities, but nowhere in said title is it even alluded to that rates and fees are to be subject to the newly enacted legislation and controls therein. The act in question is so voluminous and varied in its methods of landfill control and agencies which may exercise such control that persons interested in rates and fees of landfills would not be provoked to read the entire act unless some mention of rate regulation, at the very least, be mentioned in said title. Thus, the title with respect to regulation of rates and fees is not merely vague in this instance, but is misleading as to what is actually contained in the provisions therein.

To the contrary, the appellants assert that even a cursory reading of the title would compel a person to conclude that the "title provoked or reasonably should have provoked the reading of the act." The appellants assert that a landfill owner, or other reasonably interested person, would have read the title and then would have been provoked to read the act, because the title was replete with references to landfills or solid waste facilities.

■ In the recent case of *State ex rel. Walton v. Casey*, 179 W.Va. 485, 370 S.E.2d 141 (1988), this Court discussed in detail *W.Va. Const.* art. VI, § 30, and the numerous cases interpreting that constitutional provision. The Court summarized its conclusions in syllabus points 1 and 2:

> 1. W.Va. Const. art. VI, § 30, which requires that the object of an act of the Legislature 'shall be expressed in the title,' serves two salutary purposes. First, it is designed to give notice by way of the title of the contents of the act so that legislators and other interested parties may be informed of its purpose. Second, it is designed to prevent any attempt to surreptitiously insert in the body of the act matters foreign to its

purpose which, if known, might fail to gain the consent of the majority.

> 2. The requirement of expressiveness contemplated by W.Va. Const. art. VI, § 30 necessarily implies explicitness. A title must, at a minimum, furnish a 'pointer' to the challenged provision in the act. The test to be applied is whether the title imparts enough information to one interested in the subject matter to provoke a reading of the act.

Obviously, the question to be decided is whether the title to Comm.Sub.H.B. 3146 "imparts enough information to one interested in the subject matter to provoke a reading of the act," or whether, at a minimum, a "pointer" was furnished to *W.Va. Code*, 24-2-1b [1988].

■ In the case now before us, the appellees, as motor carriers, are regulated by the PSC. Significantly, they are landfill operators, and as landfill operators, would certainly be interested in Comm.Sub.H.B. 3146. Any reading of the title would have alerted a reasonable person interested in landfills to read the act. This omnibus bill was a major undertaking by the legislature to control the collection and disposal of solid waste in West Virginia. As motor carriers regulated by the PSC in transporting solid waste and operating landfills, it would strain credulity to conclude that a reading of the title would not provoke a reading of the act. The key is not the absence of a reference to rates and fees charged by commercial solid waste facilities which are regulated by the PSC. Instead, the key is the presence of the reference to the collection of solid waste, specifically, the language, "all relating generally to the collection of solid waste and litter[.]" Furthermore, the title included a specific reference to the addition of *W.Va. Code*, 24-2-1b.

The appellees and the circuit court relied upon the case of *C.C. "Spike" Copley Garage, Inc. v. Public Service Commission*, 171 W.Va. 489, 300 S.E.2d 485 (1983). That case is, however, distinguishable. *Copley Garage* involved an omnibus act relating to the PSC. This Court found a violation of *W.Va. Const.* art. VI, § 30 based upon the

absence of any reference in the act's title to the deregulation of the business of towing, hauling, or carrying wrecked or disabled vehicles. Critical to the Court's holding was the fact that the title was "actively misleading" because it detailed all other purposes of the act except the deregulation provision. Syl. pt. 2, *id.*

Unlike the *Copley Garage* case, the portion of the act's title in question here is not less specific than all of the other portions of the title. Moreover, the appellees in the case now before us, as operators of landfills, were sufficiently furnished a "pointer" to *W.Va.Code*, 24–2–1b. Again, it is not the absence of a reference to the establishment of rates by the PSC which is critical. Instead, the combination of the language, "all relating generally to collection of solid waste and litter," with the reference to the addition of *W.Va.Code*, 24–2–1b, "imparts enough information to one interested in the subject matter to provoke a reading of the act." Syl. pt. 2, in part, *State ex rel. Walton v. Casey*, 179 W.Va. 485, 370 S.E.2d 141 (1988).

Furthermore, a fundamental principle set forth by this Court in syllabus point 2 of *State ex rel. Graney v. Sims*, 144 W.Va. 72, 105 S.E.2d 886 (1958), is that "[i]n considering whether an act of the Legislature is violative of the constitutional requirement concerning its title, the language and title of the act will be construed in the most comprehensive sense favorable to its validity." *Accord*, syl. pt. 2, *City of Huntington v. Chesapeake & Potomac Telephone Co.*, 154 W.Va. 634, 177 S.E.2d 591 (1970).

Finally, we note that the appellees challenged the constitutionality of *W.Va.Code*, 24–2–1b [1988] upon two other grounds, first, that "the class of solid waste facilities subject to *Code* 24–2–1b violates the equal protection and due process clauses of the United States and West Virginia Constitution for lack of a rational basis" and, second, that such *Code* provision "is violative of the interstate commerce and contract clauses of the United States Constitution." The circuit court did not address those issues, and, therefore, we decline to do so here. In syllabus point 2 of *Sands v. Security Trust Co.*, 143 W.Va. 522, 102 S.E.2d 733 (1958), we held that "[t]his Court will not pass on a nonjurisdictional question which has not been decided by the trial court in the first instance." *Accord*, syl. pt. 2, *Crain v. Lightner*, 178 W.Va. 765, 364 S.E.2d 778 (1987); syl. pt. 2, *Duquesne Light Co. v. State Tax Dept.*, 174 W.Va. 506, 327 S.E.2d 683 (1984), *cert. denied*, 471 U.S. 1029, 105 S.Ct. 2040, 85 L.Ed.2d 322 (1985).

For the reasons stated above, the order of the Circuit Court of Kanawha County is reversed, and this case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.