**FILED**
**May 23, 2023**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.) No. 21-0323** (Fayette County 20-F-11, 20-F-12, 20-F-13)

**Justin G. Conner**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Justin G. Conner appeals the Circuit Court of Fayette County's denial of his motion for a judgment of acquittal of his burglary charge.[1] Upon review, we find that the circuit court did not err in denying the motion because (1) Mr. Conner waived his arguments by failing to properly raise them before the circuit court, and (2) the circuit court's instructions to the jury included the element of burglary that Mr. Conner now argues should be required. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure for resolution in a memorandum decision.

In late summer 2018, Mr. Conner and his girlfriend, C.B., moved to a residence together in Fayette County, West Virginia.[2] Both of their names were on the lease to the residence, and Mr. Conner had belongings in the residence. In mid-March 2019, Mr. Conner threatened C.B. and carried her down the hall by her throat. She later awoke to him having sex with her. Two days later, he again grabbed her by the throat and would not let her leave the home. C.B. called 911 and sought and received an emergency domestic violence protective order ("DVPO") from the magistrate court. After being served with the emergency DVPO, Mr. Conner returned to the

---

[1] Petitioner appears by counsel Matthew Brummond. The State appears by counsel Attorney General Patrick Morrisey and Solicitor General Lindsay S. See.

[2] Mr. Conner's trial counsel called this motion a motion to dismiss. However, as he challenged the sufficiency of the evidence, we will consider it a motion for a judgment of acquittal, pursuant to West Virginia Rule of Criminal Procedure 29(a).

[2] We use initials to protect the identity of the victim in this case, as it involves a crime of a sexual nature. *See* W. Va. R. App. P. 40(e). *See also Goodwin v. City of Shepherdstown*, 241 W. Va. 416, 419 n.2, 825 S.E.2d 363, 366 n.2 (2019).

1

residence and grabbed her again by the throat. C.B. eventually left and called 911 again. Approximately a week later, the family court issued an uncontested DVPO.

Separate from the DVPO proceedings, a law enforcement officer criminally charged Mr. Conner with strangulation, violation of a DVPO, domestic battery, and domestic assault. He was released from jail on bond with a condition that he not contact C.B.

Mr. Conner and C.B. later reconciled. C.B. requested termination of the DVPO, and the family court granted her request. Sometime around April 14, 2019, Mr. Conner moved back into the residence with C.B. He paid April's rent. The criminal charges, however, remained pending, and his bond condition forbidding him from contacting C.B. remained in effect.

Mr. Conner and C.B. argued on April 14, 2019, and she left. When C.B. returned the next day they argued again, and Mr. Conner began choking her. After she called 911, he departed the residence. At trial, Mr. Conner told the jury that he knew that law enforcement would have arrested him had he stayed, as he was under a no-contact order. After Mr. Conner left, C.B barred the door by screwing in a board on the back door to prevent him from entering with his keys. On the morning of April 16, 2019, C.B. heard Mr. Conner kick in the barricaded back door. Mr. Conner entered the residence and he began choking C.B. yet again.

In January 2020, a grand jury returned two indictments against Mr. Conner: (1) an eleven-count indictment for the March 2019 offenses, including strangulation and third-degree sexual assault; and (2) a four-count indictment for the April 2019 offenses, including burglary and domestic battery. The circuit court held a trial on both indictments.

While the State provided proposed jury instructions to the trial court, Mr. Conner did not. At the conclusion of the jury charge conference, Mr. Conner's counsel noted that "everything for statutory instructions and the jury instructions are essentially a recitation of statutory law[,] and they appear to be correct." The State provided the circuit court with the following jury instruction regarding burglary:

> Burglary is committed when any person breaks and enters, or enters without breaking, either in the daytime or nighttime, a dwelling house or out house adjoining thereto, or occupied therewith *of another person* with the intent to commit a crime therein.
>
> "Dwelling house" shall include but not be limited to a mobile home, house trailer, modular home, factory built home, or self-propelled motorhome use[d] as a dwelling regularly or from time to time, or any other nonmotive vehicle primarily designed for human habitation and occupancy and use[d] as a dwelling regularly or from time to time.
>
> Before the defendant, Justin G. Conner, can be convicted of burglary, the State must overcome the presumption of innocence and prove to the satisfaction of the jury that a reasonable – beyond a reasonable doubt that: the defendant, Justin G. Conner, in Fayette County, West Virginia on or about the 16th day of April 2019, did

2

> unlawfully, intentionally, and feloniously, break and enter the dwelling house of [C.B.], with the intent to commit a criminal offense.

(Emphasis added and quoted as recited to the jury). Mr. Conner did not object to this instruction, and it was part of the trial court's charge to the jury.

After the State presented its case, Mr. Conner moved the court to dismiss his burglary charge. While Mr. Conner did not deny kicking in the back door to the residence, he argued that the evidence showed that he lived there, that he paid rent, and that his name was on the lease. He claimed that burglary "is a property crime" and that he could not have burglarized his own house. The State responded that while it had no evidence of an eviction, the evidence was sufficient to show that the victim had bolted the door and that Mr. Conner "did not reside [there], at that time, when he kicked the door in the next morning." The trial court denied Mr. Conner's motion and reasoned that the indictment alleged that Mr. Conner "broke and entered the dwelling house of [C.B.] with intent to commit a crime" there and that the State presented evidence "that this woman was dwelling in this particular home." The court explained that there was "evidence that he did break and enter" and concluded that this contention was "an issue for the jury to determine whether or not he's guilty of burglary." At the conclusion of trial, Mr. Conner renewed his motion, which the State again opposed. The trial court found that "there has been sufficient evidence presented from which a reasonable jury could conclude that the defendant is guilty of the offenses set out in both of these indictments." After deliberation, the jury found Mr. Conner guilty of the burglary charge, among other offenses. He now appeals.

"The trial court's disposition of a motion for judgment of acquittal is subject to our *de novo* review." *State v. LaRock*, 196 W. Va. 294, 304, 470 S.E.2d 613, 623 (1996). To the extent that this appeal involves questions of law or the interpretation of a statute, the Court examines the issue de novo. *State v. Sulick*, 232 W. Va. 717, 724, 753 S.E.2d 875, 882 (2012) (noting, "[a]s a general rule, we have held that 'questions of law and interpretations of statutes and rules are subject to a *de novo* review.'"(quoting Syl. pt. 1, in part, *State v. Duke*, 200 W. Va. 356, 489 S.E.2d 738 (1997)).

Mr. Conner's argument before this Court concerns the language of the burglary statute. When the Legislature amended the burglary statute in 2018, it removed the words "of another." *See* W. Va. Code § 61-3-11(a) (eff. 2018).[3] *See also State v. Elswick*, No. 17-1112, 2019 WL

---

[3] Subsection a of West Virginia Code § 61-3-11 now reads:

> Any person who breaks and enters, or enters without breaking, a dwelling house or outbuilding adjoining a dwelling with the intent to commit a violation of the criminal laws of this state is guilty of a felony and, upon conviction thereof, shall be imprisoned in a state correctional facility for not less than one nor more than 15 years.

Before the 2018 amendments, subsections a and b of West Virginia Code § 61-3-11 read as follows:

2337436, at *1 n.2 (W. Va. June 3, 2019) (memorandum decision) (describing other 2018 changes to the burglary statute). Mr. Conner centers his assignments of error on this amended version of the burglary statute. First, he argues that this Court should "read the [2018] West Virginia burglary statute to require the offense be committed against the dwelling house 'of another.'" He also contends that the amendment did not "eliminate the requirement of unlawful entry." Mr. Conner argued neither of these theories to the trial court, where he limited his argument to property rights. We do not need to reach the issue of whether the amended statute eliminated the element "of another" and any related claims, as Mr. Conner has waived these arguments. *See* Syl. pt. 1, *State v. Berry*, 227 W. Va. 221, 707 S.E.2d 831 (2011) ("Errors assigned for the first time on appeal will not be regarded in any matter of which the trial court had jurisdiction or which might have been remedied in the trial court had objection been raised there. Syllabus point 17, [in part,] *State v. Thomas*, 157 W. Va. 640, 203 S.E.2d 445 (1974)."). Mr. Conner argues in his reply brief that the trial court was on notice of the issue, so he did not waive it. Still, Mr. Conner's argument before the trial court focused on the idea that one cannot burglarize one's own home as a general theory, and did not claim any error based upon the language of the statute and its amendment.

Furthermore, Mr. Conner's assertion that this Court should find an exception to any waiver because the exception meets the plain error standard has no merit. Despite the change in statutory language, the trial court provided the jury with an instruction containing the very resolution Mr. Conner now seeks from this Court. The trial court instructed the jury that the dwelling house had to be "of another person"—specifying an element that the jury must find to convict Mr. Conner of burglary. And the jury did so. *See State v. Miller*, 197 W. Va. 588, 606, 476 S.E.2d 535, 553 (1996) (explaining that "'juries are presumed to follow their instructions.'" (quoting *Zafiro v. United States*, 506 U.S. 534, 540, 113 S. Ct. 933, 939, 122 L. Ed. 2d 317 (1993))). While Mr. Conner raised the issue regarding burglarizing one's own home when he made his motion for a judgment of acquittal, he did not seek a further jury instruction for clarification explaining what "of another" means.[4] *See State v. Miller*, 194 W. Va. 3, 19, 459 S.E.2d 114, 130 (1995) (finding that the

(a) Burglary shall be a felony and any person convicted thereof shall be confined in the penitentiary not less than one nor more than fifteen years. If any person shall, in the nighttime, break and enter, or enter without breaking, or shall, in the daytime, break and enter, the dwelling house, or an outhouse adjoining thereto or occupied therewith, of another, with intent to commit a crime therein, he shall be deemed guilty of burglary.

(b) If any person shall, in the daytime, enter without breaking a dwelling house, or an outhouse adjoining thereto or occupied therewith, of another, with intent to commit a crime therein, he shall be deemed guilty of a felony, and, upon conviction, shall be confined in the penitentiary not less than one nor more than ten years.

[4] Though C.B. testified that she and Mr. Conner lived together in the house, that his name was on the lease, and that he paid most of the utilities, other evidence presented at trial showed that Mr. Conner's bond condition prohibited him from contacting her, that he had moved out at times, and that she barred the door to prevent his return. This evidence supported the jury's

4

defendant's failure to seek a jury instruction on self-defense was a voluntary waiver). At the conclusion of the charge conference, Mr. Conner's counsel noted that the jury instructions appeared to be correct. For these reasons, we find no error occurred.

As Mr. Conner waived his arguments at the circuit court level, and further received the outcome he now seeks, we affirm the circuit court.

Affirmed.

**ISSUED:**    May 23, 2023

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice C. Haley Bunn


**CONCURRING:**
Justice William R. Wooton


WOOTON, J., concurring:

I write separately to express my agreement with petitioner's argument that the 2018 amendment to the burglary statute contained in West Virginia Code § 61-3-11 suffers from a constitutional defect. The title of the amendment failed to place both legislators and the public on notice of the sea change imbedded into the amendment as to the crime of burglary, in violation of article six, section thirty of the West Virginia Constitution. As it currently exists, the burglary statute now makes any crime one commits or intends to commit upon entry of one's own home a "burglary." This is inconsistent with the well-accepted underlying principle of the crime of burglary and, I believe, was an unintended consequence of the amendment. However, I concur with the majority's affirmance of petitioner's burglary conviction because any constitutional defect in the burglary statute was harmless as to him. As the majority correctly notes, the jury was instructed that it must find that petitioner entered the dwelling house "of another"—the very element which petitioner claims the statute now unconstitutionally omits.

Our burglary statute is codified under Chapter 61, Article 3 entitled "Crimes Against *Property*." (Emphasis added). Burglary is historically and inherently a breach of the right of habitation and our Legislature has codified the crime consistent with this understanding.[1] In

---

conclusion that Mr. Conner burglarized the dwelling "of another." *See* Syl. pt. 3, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995) (stating, in part, that "a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt").

[1] As one commentator has summarized,

2018, the Legislature sought to eliminate the prior distinction in the statute between daytime and nighttime burglary—as made apparent by the title to the amendment itself which read:

> AN ACT to amend and reenact § 61-3-11 of the Code of West Virginia, 1931, as amended, relating to the crime of burglary; *eliminating the offense of daytime burglary; making breaking and entering or entering without breaking into a dwelling or outbuilding thereof a felony regardless of time of day*; and establishing the criminal penalty for burglary.

2018 West Virginia Laws Ch. 56 (S.B. 37) (emphasis added). Unfortunately, the amendment also omitted the requirement that the "dwelling house" into which one breaks and/or enters with intent to commit a crime must be "of another." Therefore, anyone in West Virginia who enters his or her home with the intent to commit any crime, and commits it, has committed not only the underlying crime, but a felony burglary as well. Further, anyone who enters his or her home with the intention to commit any crime, but does not ultimately commit that crime, has still theoretically committed a felony "burglary."

> Article six, section thirty of the West Virginia Constitution provides that
>
> [n]o act hereafter passed shall embrace more than one object, and that shall be expressed in the title. But if any object shall be embraced in an act which is not so expressed, the act shall be void only as to so much thereof, as shall not be so expressed[.]

This constitutional requirement is critically important. It informs "legislators and other interested parties" of its purpose and prevents inclusion of "matters foreign to its purpose which, if known, might fail to gain the consent of the majority." Syl. Pt. 1, in part, *State ex rel. Walton v. Casey*, 179 W.Va. 485, 370 S.E.2d 141 (1988); *see also* Syl. Pt. 5, *State ex rel. Marockie v. Wagoner*, 191 W. Va. 458, 446 S.E.2d 680 (1994). Further, this requirement of title expression "necessarily implies explicitness. A title must, at a minimum, furnish a 'pointer' to the challenged provision in the act. The test to be applied is whether the title imparts enough information to one interested in

---

> Prominent eighteenth-century legal scholars affirmed this habitation-based definition of burglary. In his Commentaries on the Laws of England, Blackstone asserted that burglary involves "a forcible invasion and disturbance of that right of habitation, which every individual might acquire even in a state of nature." Furthermore, William Hawkins listed burglary as one of two "[o]ffences against the [h]abitation of a [m]an."

Stephen D. Sutherland, *"Burglar of Interest": An Analysis of South Carolina Burglary Law After State v. Singley*, 64 S.C. L. Rev. 849, 857 (2013).

the subject matter to provoke a reading of the act." Syl. Pt. 2, *Walton*, 179 W.Va. at 485, 370 S.E.2d at 141.

Here, the title to the 2015 amendment expressly mentioned a singular purpose: to "eliminat[e] the offense of daytime burglary" and make burglary a felony "regardless of time of day[.]" No other purpose or alteration is mentioned. However, the most profound alteration to the statute is removal of the requirement that the "dwelling house" or adjoining "outbuilding" be "of another."[2] The amendment's title not only fails to provide notice of this substantial enlargement of the breadth of the crime, but affirmatively (albeit likely unintentionally) misdirects away from this change by mentioning only a laudable elimination of various gradations of the crime. *Cf.* Syl. Pt. 1, *C.C. Spike Copley Garage, Inc. v. Pub. Serv. Comm'n of W. Va.*, 171 W. Va. 489, 300 S.E.2d 485 (1983) ("Where the title to an act of the Legislature is specific about the purpose of all provisions of an omnibus act except one isolated provision, the title is deficient under W.Va. Const., art. VI, § 30 with regard to the provision in the act whose purpose is obscured because the omission of one purpose in a title that is otherwise exhaustively informative is positively misleading.").

As indicated, I believe this omission to have been entirely unintentional. Under differing circumstances, this defect might have been corrected by this Court through use of the "least intrusive remedy" doctrine. This permits the Court to strike down any alteration to the statute but for that which was properly noticed in the title:

> Where a statute serves an urgent and necessary public purpose but is technically deficient for constitutional reasons, this Court will apply the doctrine of the least intrusive remedy and give the statute, wherever possible, an interpretation which will cure its defect and save it from total invalidation.

Syl. Pt. 2, *Weaver v. Shaffer*, 170 W. Va. 107, 290 S.E.2d 244 (1980). This Court has long recognized that

> "[a] statute may contain constitutional and unconstitutional provisions which may be perfectly distinct and separable so that

---

[2] However, it is not the mere absence of the phrase "of another" which creates the problem. In fact, many states' statutes no longer include that phrase: "The requirement that the structure be that of another is to be found only in a minority of the contemporary burglary statutes." 3 Wayne LaFave, *Substantive Criminal Law* § 21.1(c) (3d ed. 2022). However, the absence of that phrase does not undermine the purpose of those statutes because they employ a description of the type of "entering" required such as to maintain the nature of the offense as violation of a right of habitation: "The most common statutory term [describing the required entry] is 'unlawfully,' but some jurisdictions use other language, such as 'unauthorized,' by 'trespass,' 'without authority,' or 'without consent.' Though these statutory formulae are not in all respects identical, they generally require that the entry be unprivileged." *Id*. § 21.1(a) (footnotes omitted). Here, the Legislature removed the "of another" language without substituting another descriptor which would maintain the nature of the crime—further evidence of the unintended nature of the omission.

some may stand and others will fall; and if, when the unconstitutional portion of the statute is rejected, the remaining portion reflects the legislative will, is complete in itself, is capable of being executed independently of the rejected portion, and in all other respects is valid, such remaining portion will be upheld and sustained."

*Frantz v. Palmer*, 211 W. Va. 188, 193-94, 564 S.E.2d 398, 403-04 (2001) (quoting Syl. Pt. 6, *State v. Heston*, 137 W. Va. 375, 71 S.E.2d 481 (1952)).  This doctrine serves the vitally important purpose of "assur[ing] that the statute will not be unconstitutionally applied."  Syl. Pt. 1, in part, *State ex rel. Harris v. Calendine*, 160 W. Va. 172, 233 S.E.2d 318 (1977).

In other words, because the amendment failed to properly excise "of another" from the statute, but did properly eliminate the daytime/nighttime distinction, the Court had the authority to give the statute precisely that reading.  As the Court in *Weaver* explained, "Most appellate courts have recognized in one way or another the problems which can be created for society by striking down for a technical defect a statute which, in general, achieves a worthwhile public goal when there is absolutely no assurance that the Legislature will again pass a similar statute."  *Id*. at 112, 290 S.E.2d at 249.

In the instant case the petitioner received an instruction which included the unconstitutionally omitted element "of another"; accordingly, it was unnecessary to the resolution of this case to strike down the statutory amendment.  However, I encourage our Legislature to revisit this statute at its next opportunity to cure this defect and ensure that the statute properly expresses its will in regard to this crime.

Accordingly, I respectfully concur.

8