438 S.E.2d 853

**Anna Jean TALLMAN, Plaintiff Below, Appellant,**

v.

**Clay S. TALLMAN, Defendant Below, Appellee.**

**No. 21545.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 28, 1993.

Decided Dec. 15, 1993.

---

Harry A. Smith, III, Jory & Smith, Elkins, for appellant.

R. Sue Core, Elkins, for appellee.

PER CURIAM:

This is a sequel to this Court's opinion in *Tallman v. Tallman*, 183 W.Va. 491, 396 S.E.2d 453 (1990). In the original *Tallman* decision, the Court discussed at some length the division of the property of Anna Jean Tallman and Clay S. Tallman, the parties in this proceeding, in their divorce. The Court affirmed the conclusions of the Circuit Court of Randolph County with regard to the division of the parties' property other than a 115–acre farm and $5,000.00 in savings bonds. With regard to the 115–acre tract, the Court ruled that the appellant, Anna Jean Tallman, should be afforded an opportunity to cross-examine a court-appointed appraiser, Carl Spessert, and to present independent evidence as to the value of the parcel. The Court also indicated that the trial court was to consider whether the value of the 115–acre tract was be equally divided between the parties under the principles of equitable distribution or whether it should be unequally divided in light of the factors set forth in *Whiting v. Whiting*, 183 W.Va. 451, 396 S.E.2d 413 (1990). The Court further directed the circuit court to declare $5,000.00 in savings bonds claimed by the appellant, Anna Jean Tallman, to be her separate property.

In the present proceeding, the appellant, Anna Jean Tallman, concedes that the circuit court followed this Court's mandate in allowing her to cross-examine Carl Spessert and to develop independent evidence on the value of the 115–acre tract. She, however, claims that the circuit court erred in accepting Mr. Spessert's value for the property rather than the value placed upon it by her appraiser. Mrs. Tallman also claims that the trial court ignored this Court's mandate relating to the savings bonds and erred in failing to declare that the $5,000.00 in savings bonds in issue were her own separate property.

On appeal, the appellee, Clay S. Tallman, cross-assigns as error the fact that the family law master and the trial court failed to reconsider whether the 115–acre tract should be divided on an unequal basis after considering the factors set forth in *Whiting v. Whiting*, *Id.*, a reconsideration which this Court directed in the first *Tallman* opinion.

After considering the questions raised in light of the record as developed, this Court concludes that the evidence relating to the value of the parties' farm is inconclusive and is inadequate to support a conclusion as to actual value. The Court, therefore, reverses the decision of the circuit court and remands this case for further development of the evidence on the value question. The Court also believes that the trial court did consider the question of the allocation of the value of the 115–acre tract in light of the principles set forth in *Whiting v. Whiting*, and that the record fails to show that the court's ruling on that issue constituted an abuse of discretion.

Before addressing the property valuation question, the Court believes that it is desir-

able to discuss certain aspects of the factual background of that question.

As indicated in the original *Tallman* decision, it appears that at the time of their divorce the parties owned a farm composed of a 115–acre tract of land purchased shortly after their marriage, as well as additional tracts of land purchased later. In suggesting a division of the parties property, the commissioner in the case recommended that the farm be divided in the following manner:

Two-thirds (⅔) of the value of the farm real estate purchased in 1950 [the 115–acre tract] to the Defendant [Clay S. Tallman]. One-third (⅓) of the value of the farm real estate purchased in 1950 to the Plaintiff [Anna Jean Tallman]. One-half of the farm real estate purchased subsequent to 1950 to each the Defendant and the Plaintiff. One-half (½) of the value of the livestock and farm equipment to each of the parties.

In later discussing the valuation of the parcels purchased after 1950, the commissioner assigned a value of $24,450.00 to the property and allocated $12,225.00 of that to Clay S. Tallman and $12,225.00 to Anna Jean Tallman. Additionally, the commissioner assigned a value of $25,292.00 to the livestock and equipment on the farm and allocated precisely one-half of this amount to Clay S. Tallman and the other one-half to Anna Jean Tallman.

In the original appeal, Anna Jean Tallman, who was the appealing party, did not challenge the equal division of the parcels acquired after 1950, and she did not challenge the equal division of the values of the livestock and farm equipment. Instead, she said that:

The Court erred in accepting the Report of the Commissioner, which allocated to the Petitioner only one-third (⅓) of the value of the parties' 115–¾ acre tract of real estate.

As previously indicated, she also challenged the value placed on the 115–acre tract by the court and claimed that the court erred in refusing to allow her to cross-examine the court-appointed appraiser, Carl Spessert, and in refusing to present the conclusions of her appraiser, Joe Basilone.

Since the thrust of in the first appeal was on the division of the value of the 115–acre tract, this Court focused its discussion on the 115–acre tract and ultimately ruled that the value of that property should be divided equally between the parties in the absence of a *Whiting v. Whiting* showing that something other than an equal division was indicated.

The Court intentionally did not discuss at length the division of the farm parcels other than the 115–acre tract, since that division was apparently made to the satisfaction of the parties and since detailed discussion of them in the opinion would have only complicated an already-confusing factual discussion.

It appears, as indicated in the original *Tallman* decision, that two appraisals of the value of the parties' farm were introduced during the original proceedings in this case. The first was prepared by Cole, Layer, Trumble and Company, and the second was prepared by Carl Spessert, an appraiser appointed by the trial court with the approval of the parties. As indicated in the original opinion, the Cole, Layer, Trumble appraisal covered all the real estate encompassed in the parties' farm, that is, not only the 115–acre tract, but the additional tracts as well. The Spessert appraisal covered the parties' "farm real estate" and contained a separate figure for the personal property used in connection with the farm.

In reversing the decision of the circuit court in the first *Tallman* decision, this Court, for the reasons stated in the first *Tallman* opinion, concluded that Anna Jean Tallman was entitled to introduce the values found by her own appraiser and that she was entitled to cross-examine Carl Spessert. The Court also ruled that the trial court should reconsider the two-thirds/one-third allocation of the 115–acre tract in light of the factors set forth in *Whiting v. Whiting, supra.*

It appears that after the filing of this Court's opinion in the original *Tallman* appeal, the Circuit Court of Randolph County, pursuant to the remand, directed that a hearing be held by a family law master on the questions which were the subject of the remand. The hearing was conducted on October 8, 1991, and at the hearing the appellant,

Anna Jean Tallman, was given the opportunity to cross-examine Carl Spessert, as directed by this Court on remand. Mr. Spessert testified that he was a farmer and that he was self-employed in timbering. When asked what his experience was in appraising property, he testified: "Well, I've bought and sold several pieces of land in the last twenty years, and I have a farm, and then I have another piece of property on 219 at Karens...." He also admitted that he had never prepared a written appraisal of any land. When asked what "fair market value" was, he testified that fair market value was "whatever you could get out of something if you had to sell it."[1] He also admitted that he was not a certified real estate appraiser and that he couldn't remember ever previously testifying as a real estate appraiser, even though he had made appraisals as a member of a Randolph County Circuit Court land condemnation commission. Mr. Spessert used no independent comparable sales in evaluating the land. Instead, he compared the property to his own property. It also appears that he looked at no deeds; he did not go into the parties' house; and he did not determine what the house and barn were worth. It appears that he did appraise all the real estate encompassed in the parties' farm, the 115–acre tract as well as the additional parcels.

During the hearing, Mrs. Tallman was also permitted to introduce the values found by her appraiser, Joe Basilone. Mr. Basilone had worked as a real estate broker in Elkins, West Virginia. In assessing the value of the parties' real estate, Mr. Basilone had read the deeds to the Tallman properties, had analyzed each tract, and had used comparable sales to arrive at values. He arrived at a substantially higher figure than did Mr. Spessert.

On cross-examination, Mr. Basilone admitted that he had quit the real estate business since he was unable to make an adequate living in it. He further admitted that he was not a certified appraiser, and when asked about his formal training to appraise real estate, he testified that he had attended a one-day seminar in real estate appraisal in Charleston, West Virginia, in October or November, 1978. When questioned about how he had conducted his appraisal of the parties' property, he admitted that he had not actually gone on it, but had appraised it by driving by it. He further indicated that he had not gone into the parties' residence.

At the conclusion of the hearing, the family law master who conducted the hearing found that the fair market value of the 115.75–acre tract was essentially the value assigned to it by Mr. Spessert. He further recommended that the property be equally divided between the parties. In reaching the latter conclusion, the family law master recognized that the question of division of the value of the 115–acre tract was to be addressed by applying the provisions set forth in W.Va.Code § 48–2–32 and the principles enunciated in *Whiting v. Whiting, Id.* He further stated:

> The record supports a conclusion that the 115 acre farm, titled jointly, was a marital

---

1. Mr. Spessert also described the methods for appraising real estate in the following way:

   Q: Do you know what methods there are for appraising real estate?
   A: Yeah.
   Q: What are they?
   A: Some people, they get up—You know, they compare what's been sold here and there, in the area and so on and they measure the acreage and size of the building and all that kind of stuff.
   Q: Is that one or two different approaches?
   A: Well, that's the approach, you know, they take—The re-appraisal of the property, they came around, and they measured their house and their basement and their garage and their barn and all that sort of thing.
   Q: What I'm asking you is: When you look at the comparable properties or make the mea-surements, are you saying those are two different methods of appraising or is it one method of appraising?
   A: Well, your comparables would be one method, yeah, and measurement.
   Q: So, you're saying the measurement is part of that comparable process?
   A: Yeah.
   Q: Now, what other types of appraisal methods are there?
   A: Well, you just look at the land and figure the value. You know, what you think it would be worth.
   Q: Any other methods other than the comparable sales and looking at the land approach?
   A: Well, I'm sure there's other methods, but—
   Q: But none that you're aware?

asset, and presumptively subject to equal division. The record further reveals no significant evidence which would, in the Family Law Master's view, support a conclusion that Mr. Tallman had rebutted that presumption. The record supports a conclusion that joint titling was intended by the parties, and there was no evidence of fraud, duress or deception that would serve as a basis for overcoming the gift implications presumptively inherent in such joint titling.

The family law master failed to make any declaration as to the $5,000.00 in bonds which this Court directed be declared the separate property of the appellant, Anna Jean Tallman.

Upon submission of the family law master's recommended decision to the circuit court, both parties took issue with it. The appellant claimed that the family law master had erred in accepting the testimony of Carl Spessert as to the value of the farm, and she claimed that the family law master's decision did not take into consideration this Court's mandate that the court reconsider the value of the farm. She also claimed that the family law master had failed to recommend that she be held entitled to the $5,000.00 worth of disputed bonds as her separate property. She did not take issue with the family law master's recommendation that, under *Whiting*, the value of all the real estate should be equally divided. Clay S. Tallman, on the other hand, claimed that the master erred in ruling that the value of the 115–acre tract was to be divided evenly between the parties.

Following the filing of the petitions for review with the circuit court, the circuit court, on July 16, 1992, entered a final order finding that the family law master's decision was supported by substantial evidence and ordering that the family law master's recommended decision be entered.

On appeal, the appellant's first two contentions are that the circuit court erred in accepting the recommendation of the family law master and ordering that the fair market value of the parties' 115–acre farm was $50,550.00, as determined by witness Carl Spessert. She also claims that the circuit court erred in accepting the recommendation of the

family law master which failed to assign any value whatsoever to the smaller tracts of real estate which joined the 115–acre tract to constitute the farm.

In syllabus point 3 of *Rogers v. Rogers*, 182 W.Va. 388, 387 S.E.2d 855 (1989), this Court ruled that:

The trial court is under a duty pursuant to W.Va.Code § 48–2–32(d) (1986) to: (1) "[d]etermine the net value of all marital property . . .;" (2) "[d]esignate the property which constitutes marital property, and define the interest therein to which each party is entitled . . .;" and (3) [d]esignate the property which constitutes separate property. . . ." Failure to follow this statutory mandate will warrant remand and further development in order to equitably distribute marital property.

In *Tankersley v. Tankersley*, 182 W.Va. 627, 390 S.E.2d 826 (1990), the Court recognized that in computing the net value of property to be divided in a divorce in accordance with the principles of equitable distribution, a "market value" was to be assigned by the trial court. The court defined "market value" in syllabus point 1 of *Tankersley* in the following way:

"The market value is the price at which a willing seller will sell and a willing buyer will buy any property, real or personal." Syllabus Point 3, *Estate of Aul v. Haden*, 154 W.Va. 484, 177 S.E.2d 142 (1970).

The Court also indicated that net value was to be determined by deducting from "market value" the amount of any lien or encumbrance against the property. *Tankersley v. Tankersley, Id.*

It appears that in the present case, witness Carl Spessert, while he did have some knowledge of land values, did not define "market value" in accordance with the standards set by this Court in *Tankersley v. Tankersley, Id.*, and *Estate of Aul v. Haden, supra.* It further appears that he did not use appropriate comparable sales in arriving at his value, and there is some question as to whether he engaged in appropriate research before reaching his conclusion. While he was apparently somewhat aware of property values in the neighborhood, he was apparently un-

aware of all the technical forms of real estate appraisal.

On the other hand, Mr. Basilone produced values remarkably higher than those found by Mr. Spessert.

■ In view of the circumstances, the Court believes that the appellant is correct in arguing that the trial court erred in accepting Mr. Spessert's figures. The Court notes, however, that the examination of Mr. Basilone threw some confusion upon the validity of his valuations. Mr. Basilone had left the real estate business because of his inability to make an adequate income in it. Although he had been a real estate broker, he admitted that he was not a certified appraiser, and apparently his formal training in real estate appraisal had been limited to attending a one-day seminar in real estate appraisal in Charleston, West Virginia, in October or November, 1978. He did indicate that he had been involved with the sale of a large number of parcels of rural property and that he consequently had knowledge of the values of real property in the Randolph County area.

Mr. Basilone further indicated that he had not actually been on the Tallman property and that his valuation of it was based on a "drive-by". He further indicated that he felt that he could have made a more accurate appraisal of the property if he had actually gone on it.

■ As indicated in *Rogers v. Rogers, supra*, it is incumbent upon a trial court undertaking to make a division of marital property to determine the net value of the property. Certainly, the underlying idea is that the determination be made upon estimates of valuation arrived at by persons qualified to make such estimates and by persons who have taken such steps as are reasonably necessary to arrive a fair valuation figures. *See Tankersley v. Tankersley, supra;* and *Rogers v. Rogers, supra.*

In the present case, this Court believes that the appellant's cross-examination of Carl Spessert threw substantial doubt upon his qualification to appraise the property in question. Mr. Spessert was not a certified appraiser, and he did not articulate the standard for "market value" enunciated by this Court in syllabus point 1 of *Tankersley v. Tankersley, supra.* He apparently did not use comparable sales or generally recognized appraisal principles in arriving at his valuation. It further appears that he failed to inquire into the documentary history of the parties' property and that he did not enter the parties' house in the course of the valuing the property.

Further, it appears that there is some question about the Cole, Layer, Trumble, and Company valuation of the property. The valuation was made for tax purposes, and there was no extensive development of the evidence on the qualification of the individuals who performed it or on the procedures which they followed in arriving at their figures.

Lastly, it appears that there are questions about the Basilone appraisal. Mr. Basilone was not a certified appraiser, and he had extremely limited formal training in property valuation. While he apparently did have some knowledge of land values from his experience selling rural real estate in the Randolph County area, and while he did use certain recognized appraisal techniques in arriving at his valuations, it appears that he did not actually go onto the parties' land, and he, like Mr. Spessert, did not go into, or inspect, the parties' dwelling house.

■ In addition to finding problems with the qualifications or techniques of each of the appraisers involved in this case, the Court notes that they arrived markedly disparate valuations of the property in question. Mr. Spessert apparently found that the 115–acre tract was worth $50,550.00, while Mr. Basilone found that it, as well as the other tracts composing the Tallman farm, were worth $196,552.75.

After reviewing the overall situation, this Court believes that there are questions as to the validity of all the evidence of value introduced, and under the circumstances, the Court concludes that, in line with the principles set forth in syllabus point 3 of *Rogers v. Rogers, supra*, this case must be remanded for yet additional development. Specifically, the Court believes that this case should be remanded and that the trial court should

appoint an independent appraiser, who clearly has no bias for or against either party. Such appraiser must be a certified appraiser and must have formal education in appraisal techniques. Additionally, he must value the parties' property after a detailed investigation of it, including a close inspection of the property and all improvements upon it. Upon the completion of his inspection, each party should be afforded the opportunity to cross-examine him. At the completion of the cross-examination, the trial court should again address the question of the valuation of the farm.[2]

The Court notes that in the original *Tallman* decision, the Court ruled that the trial court should reconsider the division of the value of the 115–acre tract after considering the factors set forth in *Whiting v. Whiting, supra*.

In *Whiting v. Whiting*, this Court stated: W.Va.Code, 48–2–32(a), provides a presumption of equal division of the marital estate. Under W.Va.Code, 48–2–32(c), this distribution may be altered only if the circuit court determines that equal division of the marital property is inequitable in view of certain economic and noneconomic contributions to or devaluations of the marital estate by either spouse. We recently summarized the provisions of W.Va. Code, 48–2–32(c), in Syllabus Point 1 of *Somerville v. Somerville*, 179 W.Va. 389, 369 S.E.2d 459 (1988):

> "In the absence of a valid agreement, the trial court in a divorce case shall presume that all marital property is to be divided equally between the parties, but may alter this distribution, without regard to fault, based on consideration of certain statutorily enumerated factors, including (1) monetary contributions to marital property such as em-

ployment income, other earnings, and funds which were separate property; (2) non-monetary contributions to marital property, such as homemaker services, child care services, labor performed without compensation, labor performed in the actual maintenance or improvement of tangible marital property, or labor performed in the management or investment of assets which are marital property; (3) the effect of the marriage on the income-earning abilities of the parties, such as contributions by either party to the education or training of the other party, or foregoing by either party of employment or education; or (4) conduct by either party that lessened the value of the marital property. W.Va. Code § 48–2–32(c) (1986)."

*Whiting v. Whiting, supra* 183 W.Va. at 455, 396 S.E.2d at 417.

As explained in the first *Tallman* decision, the evidence relating to the 115–acre tract shows that the tract was purchased by the parties for approximately $25,000.00 shortly after their marriage and that it was titled jointly in their names. Mr. Tallman provided a substantial portion of the purchase price out of funds which he had accumulated prior to marriage. Mr. Tallman worked for the federal government for a short time after the marriage and provided some monetary contribution to the parties' income and to the farm, but after working for approximately one year for the federal government, he worked exclusively on the farm. The record shows that from 1963 until 1984, the appellant, Anna Jean Tallman, taught at Davis and Elkins College, and for that twenty-one years she made substantial monetary contributions to the parties' income and presumptively to the development of the farm. In the years between the purchase of the farm and the time she began teaching for Davis and Elkins College, Mrs. Tallman re-

---

2. The cross-examination of Mr. Spessert somewhat discredited his qualifications as an appraiser of real estate, and as indicated in the first *Tallman* opinion, the Cole, Layer, Trumble appraisal, while evidence of value to be considered, cannot be deemed conclusive. The Court notes that the valuation of the parties' tracts, other than then 115–acre tract, was apparently based on Mr. Spessert's and the Cole, Layer, Trumble figures. Because of the circumstances, the Court

believes that it is appropriate that, on remand, the trial court address the question of, and reconsider, the value of all the real estate, the 115–acre tract as well as the additional tracts.

It does not appear that the parties are substantially contesting the original values placed on the livestock or personal property, and this Court believes that these values should be considered settled and should not be addressed on remand.

mained in the residence on the parties' farm and contributed homemaker services to the marriage. It further appears that the improvement of the farm enabled Mr. Tallman to earn an income out of it and also that during marriage Mrs. Tallman pursued her education and enhanced her income-earning capacity.

In this Court's view, although the evidence shows that a large portion of the purchase price of the 115–acre tract was provided out of Mr. Tallman's personal funds, the farm was apparently substantially improved during marriage, and Mrs. Tallman, during that time, provided substantial services as well as income to the marriage.

Overall, given the circumstances, this Court cannot conclude that the trial judge abused his discretion in accepting the family law master's recommendation that the value of the 115–acre tract be treated as a marital asset and that it be equally divided in accordance with the presumption of the law.[3]

Lastly, the Court notes that the appellant claims that the circuit court erred in failing to declare that the $5,000.00 in disputed savings bonds were her separate property.

Rather clearly, this Court did indicate in the prior *Tallman* decision that the $5,000.00 in disputed savings bonds were the separate property of Anna Jean Tallman, and the Court cannot find that there has been

any showing to justify alteration of that conclusion. The Court believes that it was simply through oversight that the trial court ignored this Court's ruling on that point. The Court, however, remains of the opinion that Anna Jean Tallman is entitled to the bonds as her separate property.[4]

For the reasons stated, the judgment of the Circuit Court of Randolph County is reversed, and this case is remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*

---

3. The Court notes that Mr. Tallman states in his brief that the Court, at one point in the original *Tallman* decision, misstated the value of his annuity. The value of the annuity was properly stated elsewhere in the opinion. The annuity was mentioned in relation to Mrs. Tallman's claim that the commissioner and the trial court erred in awarding Mr. Tallman a portion of her pension or annuity rights. The Court rejected Mrs. Tallman's assignment of error on this point and stated:

It, thus, appears that what the commissioner actually did was award the appellant [Mrs. Tallman], contrary to her allegations in her brief, a one-half interest in her husband's annuity in exchange for awarding her husband a one-half interest in her pension plan.

*Tallman v. Tallman, supra* 183 W.Va. at 498, 396 S.E.2d at 460. The Court, after discussing this, concluded that this was appropriate since Mrs. Tallman had acquired her pension rights only after she was married.

Mr. Tallman's annuity would not have been mentioned if Mrs. Tallman had not made her assignment of error relating to her pension

rights. Mr. Tallman's annuity entitlement had no bearing on the Court's ruling on the farm questions in the first consideration of this case, and it likewise has had no bearing on the Court's conclusions in this case.

4. The Court notes that Mr. Tallman, in his brief, claims that the trial court erred in entering judgment against him in the amount of $25,275.00 as the result of the unravelling of parties' affairs in this case.

Obviously, the overall comparative financial standings of the parties are uncertain as the result of this opinion and cannot be finally determined until such time as the farm is finally valued. Also, it does not appear that Mrs. Tallman has conveyed her interest in the parties' farm to Mr. Tallman, so that it does not appear that there is a need to protect her interest in the real estate with a judgment.

Under the circumstances, the Court believes that the judgment against Mr. Tallman is unnecessary at this time. It accordingly should be set aside.