453 S.E.2d 678

**Roscoe MILLS, Plaintiff Below, Appellee,**

**v.**

**Fred VAN KIRK, in his Official Capacity as Commissioner of West Virginia Division of Highways, Defendant Below, Appellee,**

**Philip Keller and Donna J. Keller, Intervenors Below, Appellants.**

**No. 22270.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 28, 1994.

Decided Dec. 21, 1994.

696

Thomas R. Goodwin, Richard D. Owen, Goodwin & Goodwin, Charleston, for appellee Roscoe Mills.

Joyce F. Ofsa, Trina L. Leone, Spilman, Thomas & Battle, Charleston, for appellants.

Jeff Miller, Charleston, for appellee Fred Van Kirk, Com'r.

CLECKLEY, Justice:

The intervenors below and appellants, Philip Keller and Donna J. Keller, appeal an order granting summary judgment in favor of the plaintiff below and appellee, Roscoe Mills. This case concerns the proper interpretation of W.Va.Code, 17–2A–19 (1988), which provides for the disposition of certain turnpike and railroad properties. The intervenors and Fred Van Kirk, in his official capacity as Commissioner of the West Virginia Division of Highways (Commissioner), the defendant below and appellee, argue that W.Va.Code, 17–2A–19, requires abutting landowners be given a right of first refusal of the subject property at fair market value. The plaintiff argues, and the trial court found, that W.Va.Code, 17–2A–19, does not require a right of first refusal and that the Commissioner must obtain the "highest and best price" for such property.

Applying the plain language of the statute, we hold that abutting landowners must receive preferential treatment when purchasing state property pursuant to W.Va.Code, 17–2A–19. Under the statutory scheme, the Commissioner has the right to decide whether turnpike and railway property will be useful in the present or foreseeable future. Once this decision is made, the statute directs the Commissioner to first offer the property to the abutting landowners for fair market value. Fair market value is the price a willing party would pay for the property when there is no compulsion on any of the parties. Because we find the circuit court's interpretation of W.Va.Code, 17–2A–19, to be incorrect, the circuit court's order granting summary judgment in favor of the plaintiff is reversed.

## I.

### FACTS

In 1992, the Commissioner determined that a portion of the former Gilmer, Ripley, and Ohio turnpike was not needed for the present or foreseeable future as a State road or hiking trail and could thus be sold pursuant to W.Va.Code, 17–2A–19. After obtaining an independent appraisal of the land, the Commissioner decided to subdivide the subject property and sell it through private sales to the abutting property owners for a total price of $55,350.

The intervenors are independent business people who own the abutting property to the north of the subject property. McDonald's Corporation is the owner of record of the property to the south. The intervenors accepted the Commissioner's offer to purchase the northern portion of the land for $20,900. McDonald's rejected the Commissioner's offer of $34,450 for the remaining portion of the property.

The plaintiff is not an abutting landowner. However, the plaintiff does own the McDonald's franchise on the abutting property to the south of the subject property. For sometime prior to the proposed sale, the Division of Highways leased the abandoned property both to the plaintiff and to the intervenors. The plaintiff claims that he would purchase the entire subject property for $150,000 if it were sold at a public auction.

To prevent the sale of the subject property to the intervenors, the plaintiff instituted an action for declaratory judgment pursuant to W.Va.Code, 55–13–1 (1941), and for injunctive relief against the defendant in the Circuit Court of Kanawha County on July 6, 1992. The Division of Highways then refused to proceed with the closing on its private sale of the northern portion of the abandoned turnpike to the intervenors.

In an effort to protect their interest in the property, on December 23, 1992, the intervenors filed a motion to intervene in the declaratory judgment action instituted by the plaintiff. By agreed order dated January 4, 1993, the intervenors' motion was granted. On the same date, the intervenors filed a memorandum of law in opposition to the plaintiff's motion for summary judgment. By order dated February 4, 1993, the plaintiff's motion for summary judgment was denied because discovery had not been completed.

Limited discovery was conducted by the parties, after which both the plaintiff and the intervenors filed cross-motions for summary judgment with supporting legal memoranda. The primary issue before the circuit court hinged on its interpretation of W.Va.Code, 17–2A–19. This statute and its 1988 amendment are at issue in this case, and neither has been interpreted by this Court.

The circuit court agreed with the plaintiff's interpretation of the statute; and, by order dated October 22, 1993, granted summary judgment in favor of the plaintiff and enjoined the Commissioner from subdividing or otherwise disposing of the property other than in its entirety at a public auction. Among other findings, the circuit court determined that the statute in question did not grant a right of first refusal to abutting property owners and that the "highest and best price" provision applied in the sale of the disputed property.

## II.

## REVIEW OF SUMMARY JUDGMENT

The summary judgment granted by the circuit court is now before this Court on appeal. As we recently stated in Syllabus Point 1 of *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994):

"A circuit court's entry of summary judgment is reviewed *de novo*."

Rule 56(c) of the West Virginia Rules of Civil Procedure gives circuit courts the discretion to grant summary judgment when a moving party has shown that no genuine issue of material fact exists and the party is entitled to judgment as a matter of law. At the summary judgment phase, a circuit court's

1. This Code section was amended in 1994. Because the events and litigation at issue occurred prior to the amendment, the 1994 amendment is not applicable to this appeal. *See State ex rel. Hamrick v. LCS Services, Inc.*, —— W.Va. ——, 454 S.E.2d 405 (1994) (new statute is presumed to operate prospectively unless legislature clearly intends otherwise).

2. The pertinent sections of W.Va.Code, 17–2A–19, read as follows:

"Every such sale of real property, or any interest or right therein or structure thereon shall be at public auction.... The property

primary responsibility is " 'to determine whether there is a genuine issue for trial.' " *Painter v. Peavy*, 192 W.Va. at 192, 451 S.E.2d at 758, *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986). Therefore, inferences from the underlying facts must be drawn in the light most favorable to the nonmoving party. *See Painter v. Peavy, supra; Masinter v. WEBCO Co.*, 164 W.Va. 241, 262 S.E.2d 433 (1980); *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992). However, the party opposing a motion for summary judgment must offer sufficient evidence "for a reasonable jury to find in a nonmoving party's favor." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512, 91 L.Ed.2d at 214. If the nonmoving party fails to present satisfactory evidence showing the existence of a genuine issue of fact and inquiry concerning the facts is not desirable to clarify application of the law, then summary judgment is appropriate.

After evaluating this case in light of the foregoing principles, we find that the circuit court erred in granting summary judgment in favor of the plaintiff. As will be discussed below, the circuit court incorrectly interpreted the provisions of W.Va.Code, 17–2A–19.

## III.

## STATUTORY CONSTRUCTION

In the proceedings below, all the parties agreed that the central issue was the interpretation of the requirements of W.Va.Code, 17–2A–19.[1] The pertinent section of the Code provides for the disposition of land deemed by the defendant as "not necessary or desirable for present or presently foreseeable future state road purposes[.]"[2]

shall be sold in the manner which will bring the highest and best price therefor. The department may reject any or all bids received at the sale....

"The commissioner may transfer, sell, or otherwise dispose of those portions of former railroad right-of-way properties owned by or to be acquired by the division of highways and those properties formerly used for turnpike roads which the commissioner in his sole discretion shall determine are not necessary or desirable for present or presently foreseeable future state road purposes by first offering the same to the principal abutting landowners

The arguments of the Commissioner and intervenors are largely consistent in that they both disagree with the plaintiff's interpretation of the statute. Under their interpretation, the statute requires that abutting landowners be given the right of first refusal for the subject property at fair market value. However, the plaintiff links himself to the phrase in the statute that requires the Commissioner to sell the property at the "highest and best price." This phrase, according to the plaintiff, applies to all provisions of the statute and requires the Commissioner to obtain the highest price not only at a public auction but at a private sale as well. Consequently, under this theory, the right of first refusal for abutting landowners is not a mandate, but is merely a permissive right of the Commissioner.

 When interpreting a statute, this Court stated in the Syllabus of *Snider v. West Virginia Department of Commerce*, 190 W.Va. 642, 441 S.E.2d 363 (1994), *quoting Smith v. State Workmen's Comp. Com'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975): " 'The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature.' " To determine the true intent of the legislature, we are to examine the statute in its entirety and not select "any single part, provision, section, sentence, phrase or word." Syllabus Point 3, in part, *Pristavec v. Westfield Ins. Co.*, 184 W.Va. 331, 400 S.E.2d 575 (1990). Courts are not free to read into the language what is not there, but should apply the statute as written. If the statute is "clear," if the statutory scheme is coherent and clear, and if the law is within the constitutional authority of the lawmaking body that passed it, then the duty of interpretation does not arise and the rules for ascertaining uncertain language need no discussion. *Francis O. Day Co. v. Director, D.E.P.*, 191 W.Va. 134, 140, 443 S.E.2d 602, 608 (1994); *see also* Syllabus Point 1,

*Williams v. West Va. Dep't of Motor Vehicles*, 187 W.Va. 406, 419 S.E.2d 474 (1992); *Pristavec v. Westfield Ins. Co., supra.* Furthermore, a court may deviate from the plain meaning of a statute only in rare cases. *See State ex rel. Frazier v. Meadows,* —— W.Va. ——, —— – ——, 454 S.E.2d 65, 67 (1994) (straying from the plain meaning of the statute is appropriate only when "there is a clearly expressed legislative intent to the contrary, . . . [and where] a literal application would defeat or thwart statutory purpose . . . [or produce] an absurd or unconstitutional result").

 After examining the entire statute and applying its plain language, we find the statute in question is mandatory and prescriptive and does more than merely set out aspirational goals. The limited legislative history available and the text of the statute itself indicate the legislature was attempting to protect interests other than monetary, *i.e.*, to give the abutting landowners the opportunity to regain lost property or the lost profits from the earlier taking of property.

To agree with the plaintiff, we would have to single out one phrase as establishing the meaning of the entire statute. We refuse to do so. The better way to assess legislative intent is to review the statute in its entire and full context. We further believe that the canons of statutory interpretation also require us to make statutory determinations in a larger perspective, evaluating all relevant parts of the statute rather than one isolated provision. 2A G. Sutherland, *Statutory Construction* § 45.05 at 22–23 (5th ed. 1991). It is true, as the plaintiff claims, that the statute mentions "[t]he property shall be sold in the manner which will bring the highest and best price therefor"; but, the next paragraph of the statute, which provides a more natural reading of what is intended, states that the

without following the procedure for public auction hereinbefore set forth in this section.
 "The commissioner shall adopt and promulgate rules in accordance with the provisions of . . . [W.Va.Code,] [29A–3–1 et. seq] . . . of this code governing and controlling the making of any leases or sales pursuant to the provisions of this section, which rules may provide for the giving of preferential treatment in making leas-

es to the persons from whom the properties or rights or interest therein were acquired, or their heirs or assign and shall also provide for granting a right of first refusal to abutting landowners at fair market value in the sale or leases of former railroad right-of-way properties and former turnpike roads owned by the department of highways[.]"

Division of Highways "may transfer, sell, or otherwise dispose of those properties ... [that are no longer needed] ... by first offering the same to the principal abutting landowners without following the procedure for public auction hereinbefore set forth in this section."

Agreeing with the plaintiff, the circuit court determined there was dichotomy between the permissive and mandatory directives in the statute and decided that it would give "precedence to the mandate that state property be sold in the manner which would bring the highest and best price therefore." The wisdom of the circuit court that it is preferable to seek the highest and best price when selling state property is unassailable; but, here, it is legislative, not judicial, judgment that is controlling. The circuit court unnecessarily felt the need to choose between two mutually exclusive Code sections. There is no dichotomy in the statute; instead, the statute provides for the disposition of property to two different classes of individuals—*i.e.* the public in general and the abutting landowners. The presence of these two provisions do not create a substantive inconsistency, but only a "semantic oddity" [3] resulting from the fact that the legislature has for convenience of reference chosen to place two entirely different matters under the rubric of one subsection. Quite obviously, the two characterizations are made for entirely different purposes and there is no requirement or expectation that they coincide.

The plain language of the statute clearly gives the Commissioner the discretion to sell the property. However, once this decision is made, the property must first be offered to the abutting landowners. The "highest and best price" section of the statute refers only to the amount the Commissioner should seek in a *public* auction, not in the private sale to abutting landowners envisioned by the legislature. Undoubtedly, the legislature intended that abutting landowners circumvent the typical public auction procedure, otherwise it would not have stated that the property be offered to the abutting landowners "without following the procedure for public auction hereinbefore set forth."

The legislature did not spell out the exact method for disposing of property to abutting landowners. However, it is obvious that preferential treatment is contemplated considering the legislative mandate that the Commissioner not only promulgate rules to control the sale or lease of property; but also create a separate set of rules to "provide for granting a right of first refusal to abutting landowners at fair market value."

The meager amount of legislative history for this Act also supports the above interpretation. For example, the title of this section of the statute indicates that part of the purpose of the Act was to permit "those properties to be first sold to abutting property owners without the necessity of public auction." [4] This, in turn, suggests that the provisions covering the sale to abutting property owners would differ from those relating to public auctions. Although the title is only a mere tidbit of legislative intent, it is nonetheless a good illustration of the purposes behind the legislation since constitutional provisions require the title of a statute to embrace the actual object of an Act. *See* W.Va. Const. art. VI, § 30; *see also* Syllabus Point 2, in part, *Northwestern Disposal v. West Va. PSC,* 182 W.Va. 423, 388 S.E.2d 297 (1989), *quoting* Syllabus Point 2, *State ex rel. Walton v. Casey,* 179 W.Va. 485, 370 S.E.2d 141 (1988) (" 'A title must, at minimum, furnish a "pointer" to the challenged provision in the

---

3. The phrase "semantic oddity" was coined by Justice Scalia in *United States v. Owens,* 484 U.S. 554, 563, 108 S.Ct. 838, 844, 98 L.Ed.2d 951, 960 (1988).

4. For the text of this title, see 1988 W.Va. Acts ch. 110 at 763, stating:

"AN ACT to amend and reenact section nineteen, article two-a, chapter seventeen of the code of West Virginia, one thousand nine hundred thirty-one, as amended, relating generally to the authority of the commissioner of highways with respect to the sale, lease, exchange or lease of certain real property acquired by the West Virginia department of highways; sale, lease or use of former railroad rights-of-way and those properties which were formerly used as turnpikes and in which the department of highways has a property interest; and permitting those properties to be first sold to abutting property owners without the necessity of public auction."

act' "). The title of this Act clearly "points" to the notion that abutting landowners are singled out for preferential treatment in the Act.

## IV.

### FAIR MARKET VALUE

The only remaining matter to address is the definition of "fair market value." We have already established that the "highest and best price" section does not control or restrict the other provisions of the statute. We find it significant that the legislature used the phrase "fair market value" in relation to sales to abutting landowners instead of requiring the Commissioner to obtain the "highest and best price" for the property in question. The plaintiff ignores the significance of the statute's structure by arguing that the fair market value of the property equals the highest amount a party is willing to pay. Under the plaintiff's theory, the broad mandate of the statute to achieve the highest and best price overrides any other definition of fair market value and his offer to pay $150,000 establishes the actual value of the property. Again, we disagree with the plaintiff's construction and find that fair market value does not necessarily equal the highest and best price.

The statute in question authorizes the Commissioner to "promulgate rules ... granting a right of first refusal to abutting landowners at fair market value." Because this provision grants to the Commissioner the right to determine fair market value, our review of this issue is limited to determining whether the Commissioner abused his discretion in determining fair market value.

■■■■ The circuit court's interpretation of W.Va.Code, 17–2A–19, is entitled to no special deference and is subject to our plenary and independent review. *Mildred L.M. v. John O.F.*, 192 W.Va. 345, 452 S.E.2d 436 (1994); *Zapata Haynie Corp. v. Barnard,*

933 F.2d 256, 258 (4th Cir.1991). However, absent clear legislative intent to the contrary, we do afford deference to a reasonable construction of the statute by the Commissioner because he has policymaking authority with regard to the statute.[5]

■■■■ Here the Commissioner's construction, as reflected in his brief, is reasonable, supported by the law, and not contrary to legislative intent. For reasons, more specifically discussed below, we defer to that interpretation; and, accordingly, we reverse the judgment entered by the circuit court.

Fair market value is a rather elusive concept. However, the Commissioner attempted to determine the fair market value of the subject property in an objective manner by enlisting the services of an independent appraiser to evaluate the property. The appraiser determined that the property was worth $55,350. The intervenor's appraiser agreed this was an accurate appraisal. There were no facts brought to our attention concerning the appraisers that would make us question the actual value of the property or the qualifications of the appraiser relied on by the Commissioner. *See Tallman v. Tallman,* 190 W.Va. 510, 515, 438 S.E.2d 853, 858 (1993) (court questioned the method of appraisal and stated "the underlying idea is that the determination [of property value] be made upon estimates of valuation arrived at by persons qualified to make such estimates and by persons who have taken such steps as are reasonably necessary to arrive at fair valuation figures"). In fact, the plaintiff is the only party to this case that disputes the appraiser's estimate, and he does not argue that the appraiser failed to follow standard procedures for determining the value of property.

■■■■ Although an offer for property will help in determining the fair market value; merely quoting the offer of one interested party is not sufficient to conclusively establish the value. *See Sexton v. Public Service*

5. Our task on review is not to decide whether another interpretation of the statute might reasonably have been reached. It is the duty of the Commissioner to interpret the statute and to promulgate rules and regulations for its enforcement. Because the Commissioner is vested with reasonable discretion in determining the intended meaning of the statute, a court may not substitute its judgment for the Commissioner's in the absence of error of law or arbitrary, oppressive, or manifest abuse of authority.

*Comm'n,* 188 W.Va. 305, 311, 423 S.E.2d 914, 920 (1992) ("[e]ven though we have held that a landowner is competent to give an estimate of the value of his property . . ., we have never held that this valuation is conclusive"). Using an objective method to establish value is a well recognized technique for establishing fair market value. In fact, in prior cases where the valuation of property has been relevant, we have incorporated an objective standard into the definition of fair market value. *See West Va. Dep't of Highways v. Brumfield,* 170 W.Va. 677, 679, 295 S.E.2d 917, 919 (1982), *quoting* Syllabus Point 5, *Wheeling Electric Company v. Gist,* 154 W.Va. 69, 173 S.E.2d 336 (1970) ("the market value . . . is the price for which the land could be sold in the market by a person desirous of selling to a person wishing to buy, both freely exercising prudence and intelligent judgement as to its value, and unaffected by compulsion of any kind"); *see also West Va. Dep't of Highways v. Roda,* 177 W.Va. 383, 352 S.E.2d 134 (1986); *Estate of Aul v. Haden,* 154 W.Va. 484, 177 S.E.2d 142 (1970) (fair market value involves parties who are willing to buy and sell when none are under compulsion); Syllabus Point 2, *Guyandot Valley Ry. Co. v. Buskirk,* 57 W.Va. 417, 50 S.E. 521 (1905); *Tallman v. Tallman, supra* (referring to *Estate of Aul v. Haden* definition of fair market value). The idiosyncratic needs and desires of individuals cannot be allowed to inflate the fair market value of property. As stated previously, the language and structure of the statute suggest that the legislature used fair market value instead of highest and best price in order to differentiate the price that the Commissioner should obtain when offering the property to abutting landowners as opposed to the general public.

The Commissioner determined the fair market value in an unbiased manner, and no evidence was produced showing the Commissioner arbitrarily or flagrantly ignored recognized concepts concerning property valuation or misinterpreted the statute to find fair market value. Thus, we find the Commissioner did not abuse his discretion in establishing the fair market value of this property.

## V.

## CONCLUSION

For the foregoing reasons, we find that the circuit court erred in granting summary judgment. Therefore, the decision of the circuit court is reversed, and the circuit court is ordered to enter judgment consistent with this opinion.

Reversed.

BROTHERTON, C.J., did not participate.

MILLER, Retired Justice, sitting by temporary assignment.